318 F.2d 831
 MILLER & LUX, INCORPORATED, a Nevada corporation, Appellant,
v.
R. H. ANDERSON, Grace C. Arnold et al., Appellees.
MILLER & LUX, INCORPORATED, a corporation, Appellant,
v.
Allen L. CHICKERING, Charles R. Blyth, Harry H. Fair, J. J.
Hunter, and TheBank of California, a National
Banking Association, Appellees.
 Nos. 18033, 17929.
 United States Court of Appeals Ninth Circuit.
 June 18, 1963, Rehearing Denied Aug. 19, 1963.
 
 C. Ray Robinson, John Lockley, Duane W. Dresser and Mary C. Fisher, San Francisco, Cal., for appellant.
 Brobeck, Phleger & Harrison, Marion B. Plant and Richard Haas, San Francisco, Cal., for appellees Union Oil Co. of California and Independent Oil Producers Agency.
 Hanna & Morton, Harold C. Morton and Max K. Jamison, Los Angeles, Cal., for appellees Superior Oil Co.
 Clayton L. Orn, Findlay, Ohio, McCutchen, Doyle, Brown & Enersen, James D. Adams, Burnham Enersen and Arthur R. Albrecht, San Francisco, Cal., for appellee Marathon Oil Co.
 McLaughlin & Casey and James A. McLaughlin, Los Angeles, Cal., for appellee Lon V. Smith, individually and as executor for Jane Smith.
 Borton, Petrini, Conron, Brown & Condley, Bakersfield, Cal., for appellee A. J. West.
 Paul O. Broxon and Robert N. Broxon, Newport Beach, Cal., for appellee Gulf Oil Corp. of California.
 Buford W. Max, Miles W. Newby, Jr., and R. K. Barrows, Los Angeles, Cal., for appellees Texaco Inc. and The Texas Co.
 Lawler, Felix & Hall, Marcus Mattson, and Richard D. DeLuce, Los Angeles, Cal., for appellee Standard Oil Co. of California.
 Stanley F. Davie, Oakland, Cal., for Appellees Jerome Magee, as executor of the last will of Harry H. Magee, deceased, Trico Oil & Gas Co. and Gene Reid Drilling, Inc.
 Martin J. Weil and Adolph H. Levy, Los Angeles, Cal., for appellees Socony Mobil Oil Co., Inc., Kettleman North Dome Ass'n, Continental Oil Co., Western States Gasoline Corp. and C. R. Gallagher.
 O'Melveny & Myers, Frederick C. Dockweiler, William W. Alsup, Rodney K. Potter, Allyn O. Kreps, Havelock Fraser, Los Angeles, Cal., and Walter L. Rowse, Bakersfield, for appellees Getty Oil Co., Signal Oil & Gas Co., Intex Oil Co., and Moriqui Exploration Co.
 Gibson, Dunn & Crutcher, Henry F. Prince, Richard E. Davis, Martin E. Whelan, Jr., O'Melveny & Myers, William W. Alsup, Rodney K. Potter, and Allyn O. Kreps, Los Angeles, Cal., for appellee Lloyd Corp., Ltd.
 William E. Woodroof, Mervyn W. Phelan, O'Melveny & Myers, William W. Alsup, Rodney K. Potter and Allyn O. Kreps, Los Angeles, Cal., for appellee Richfield Oil Corp.
 O'Melveny & Myers, Sidney H. Wall, Rodney K. Potter and Allyn O. Kreps, Los Angeles, Cal., for appellees Rodney K. Potter and Elizabeth F. Potter, as executors of the estate of E. K. Potter, deceased.
 Pillsbury & Dunlap, David C. Dunlap, and Edwin S. Pillsbury, San Francisco, Cal., for appellee Elmer C. Bolton.
 Robert W. Walker, J. H. Cummins, and Richard K. Knowlton, Los Angeles, Cal., for appellee Chanslor-Western Oil & Development Co.
 
 
 1
 Stanley & Kirby, Charles C. Stanley and Robert A. Smith, Los Angeles, Cal., for appellee Sunray DX Oil Co.
 
 
 2
 Richard H. Peterson, W. E. Johns and Glenn West, Jr., San Francisco, Cal., for appellee Natural Gas Corp. of California.
 
 
 3
 Athearn, Chandler & Hoffman, Walter Hoffman and Edward G. Chandler, San Francisco, Cal., for appellee Elmer B. Stone.
 
 
 4
 Morrison, Foerster, Holloway, Clinton & Clark, Herbert W. Clark and Girvan Peck, San Francisco, Cal., for appellees Honolulu Oil Corp., Crocker-Anglo Nat. Bank as trustee under the will of James E. Fickett, Loretta Fickett Codington, Carol Codington, Alice June Fickett Lindsay, James Lindsay and Jennifer Lindsay.
 
 
 5
 Walter M. Gleason, San Francisco, California, Rosson & Pearson, Hanford, Cal., for appellees William F. Colm and Marion V. Rice.
 
 
 6
 Derby, Cook, Quinby & Tweedt, Lloyd M. Tweedt and Stanley J. Cook, San Francisco, Cal., for appellees R. H. Anderson and R. H. Anderson Inc.
 
 
 7
 Kimble & Hamlin and Joseph C. Kimble, Fresno, Cal., Elke, Farella & Braun and Thomas Elke, San Francisco, Cal., for appellee Frank Jeppi.
 
 
 8
 Labowe & Ventress and Ronald B. Labowe, Los Angeles, Cal., for appellees Gladys Z. Zimmerman and Charles F. Nielson as executors of the estate of F. C. Noel, deceased.
 
 
 9
 Landels, Ripley, Gregory & Diamond and Earl M. Ripley, San Francisco, Cal., for appellee Title Insurance & Trust Co., successor by merger to California Pacific Title Ins. Co.
 
 
 10
 Orrick, Dahlquist, Herrington & Sutcliffe, Christopher M. Jenks, James K. Haynes and Richard J. Lucas, San Francisco, Cal., for appellees Katherine R. Blyth, as executrix of the will of Charles R. Blyth, deceased, and Harry M. Fair, as executor of the will of Harry H. Fair, deceased.
 
 
 11
 Heller, Ehrman, White & McAuliffe and Lawrence C. Baker, San Francisco, Cal., for appellee Bank of California, N.A.
 
 
 12
 Johnson & Stanton and Thomas E. Stanton, Jr., San Francisco, Cal., for appellee J. J. Hunter.
 
 
 13
 Arthur B. Dunne, San Francisco, Cal., for appellees sought to be substituted for Allen L. Chickering, deceased.
 
 
 14
 Before MADDEN, Judge of the Court of Claims, and MERRILL and BROWNING, Circuit Judges.
 
 
 15
 MADDEN, Judge.
 
 
 16
 These two appeals, which we will treat in one opinion, are from orders of the United States District Court for the Northern District of California, Southern Division, dismissing appellant's complaints. In the Anderson case the complaint names as defendants some sixty individuals, partnerships and corporations. In the Chickering case there are five defendants, four being individuals and the fifth a banking corporation. Each complaint alleges, in substance, that the appellant is a Nevada corporation, the stock of which was, at all times mentioned in the complaint, held in trust by three trustees of the Henry Miller Trust; that, beginning at some time prior to 1927 and continuing thereafter, one J. Leroy Nickel, Jr., a trustee as well as a beneficiary of the trust, and a director and officer of the appellant; James E. Fickett, a director and the president of the appellant; J. E. Wooley, a trustee of the trust, and a director and officer of the appellant; and A. R. Olsen, a trustee of the trust and a director and officer of the appellant, acted in violation of their fiduciary obligations to the appellant, to enrich themselves and others at the expense of the appellant and to defraud the appellant. The activities of Fickett, Wooley and Olsen did not cover the entire period from 1927 to 1954, as did those of J. Leroy Nickel, Jr.
 
 
 17
 The complaints[1] recite the misdeeds and wrongs of the four persons named above as:
 
 
 18
 (1) Making and keeping profits on the purchase and sale of appellant's land and interests in land, through the use of their positions of influence and power in appellant corporation, without revealing to appellant the existence, nature and extent of such provits;
 
 
 19
 (2) Causing appellant to sell lands and interests in land to Fickett and Nickel and to various other officers and agents of appellant, directly or indirectly through the device and by means of strawmen, dummies, nominees and by other means, at less than the price that should have been obtained by the appellant, so as to realize profits by later or simultaneous resale, lease, rent or other use of said land or interests in said land, and to retain such profits for themselves, the wrongdoers.
 
 
 20
 (3) Causing appellant to sell to themselves and others, at a price less than should have been obtained by appellant, lands and interests in land without disclosing to appellant their value as actual or potential oil and gas bearing lands, so as to realize and retain for themselves profits upon later or simultaneous resale, lease, rent or other use of or dealings in the lands.
 
 
 21
 (4) Concealing from appellant and all others the existence of their conspiracy and wrongdoings.
 
 
 22
 The complaints name numerous persons who are said to have joined in the conspiracy with full knowledge of the existence and purposes of the conspiracy. Some of the persons so named are made defendants in the complaint in the Anderson case. Many of them are not made defendants. They are alleged to have caused the appellant to transfer, lease, assign or otherwise dispose of its lands and interests in lands, as more particularly described in exhibits 1 to 67 to the complaints. These exhibits contain details of conveyances, with dates, descriptions and names of grantees. The exhibits are incorporated by reference in the complaints.
 
 
 23
 A considerable number of defendants listed in paragraph XXII of the complaint in the Anderson case seem not to be charged with having knowingly joined in the conspiracy to defraud the appellant, but to be charged only with having purchased and taken their conveyances, leases, assignments and transfers 'with notice or knowledge that in so purchasing, leasing or taking said lands and interests in land they were participating in the helping to accomplish the defrauding of plaintiff (appellant) and the violation of fiduciary duties owing to plaintiff (appellant) by its directors, officers, agents, and others.'
 
 
 24
 The facts stated in this opinion are facts alleged by the appellant in its complaint and, in some instances, facts stated by appellant in admissions and in answers to interrogatories in these cases. There has been no occasion to introduce any proof of the facts so stated.
 
 
 25
 The complaints allege that after the various grantees named in exhibits 1 to 67 above received their conveyances, they drilled oil and gas wells on the land and took the products of these wells, and are now in possession of the lands and of the proceeds of their use.
 
 
 26
 The appellant alleges that during the many years that it was being defrauded by its directors, officers and agents, it was held completely captive and dominated by its directors and officers who were parties to the conspiracy, and was therefore powerless and unable to protect its interests. On June 13, 1954, certain beneficiaries of the Henry Miller Trust filed a suit in the Suerior Court of the State of California in and for the City and County of San Francisco, the principal object of which suit was to remove J. Leroy Nickel, Jr., A. R. Olsen and J. E. Wooley, the then trustees of the Henry Miller Trust, from their positions as trustees, and to procure the appointment of successor trustees. The trustees resigned or were removed, new trustees were appointed, they as owners of the stock of appellant corporation removed J. Leroy Nickel, Jr., Olsen and Wooley as directors and officers of appellant corporation, elected an independent board of directors of appellant, which board appointed new officers. The new trustees of the Henry Miller Trust and the new directors and officers of appellant corporation promptly made an investigation which disclosed the wrongs committed against the appellant. Within three months after the appointment of the new directors and officers of the appellant, the Anderson suit was filed in 1954. The Chickering suit was not filed until 1957, because not until then did appellant discover the part which, it says, the five defendants in the Chickering case played in assisting the wrongdoing directors, officers and trustees to conceal their wrongdoings.
 
 
 27
 The complaint in the Chickering case, in its paragraph XXIX-F, alleges that directors, officers and agents of the appellant corporation purchased a large number of the appellant's bonds and notes at less than their face value and enforced them against appellant at their face value, in violation of their fiduciary obligation to the appellant.
 
 
 28
 The complaint in the Anderson case asks for a judgment and decree that the defendants hold the properties described in exhibits 1 to 67, together with all proceeds, profits and income from those properties, as constructive trustees for the appellant, and restore and return them to appellant; that the defendants be required to make an accounting to the appellant of profits made at appellant's expense; that in the event that the appellant's properties have been so transferred that constructive trusts cannot be impressed upon them, the appellant have judgment against the defendants and each of them for one hundred and ten million dollars, with interest and costs, and reasonable attorneys' fees.
 
 
 29
 In the Chickering case, he relief demanded is judgment against the defendants in the amount of one hundred and ten million dollars.
 
 
 30
 The appellant corporation is a family corporation dating back to 1908. Its founder, Henry Miller, by an inter vivos transfer in 1913 and a testamentary transfer in 1916, put all the stock of the plaintiff corporation into the Henry Miller Trust, where it has remained since that time. The trust res of the trust is owned by three trustees. The beneficiaries of the trust, following Henry Miller's death in 1916, were his daughter Nellie Miller Nickel and her husband, J. Leroy Nickel, Sr., for their lives and the life of the survivor of them; then their children and the issue of any deceased child, per stirpes, for life, until the death of the last of the children of Nellie Miller Nickel and J. Leroy Nickel, Sr., at which time the corpus of the trust was to be distributed to the descendants of such children, per stirpes, in fee.
 
 
 31
 Henry Miller died in 1916. His daughter Nellie Miller Nickel and her husband J. Leroy Nickel, Sr., and their three children were then living. The children were J. Leroy Nickel, Jr., George W. Nickel and Beatrice Nickel Morse. J. Leroy Nickel, Sr., died in 1937 and his wife Nellie Miller Nickel died in 1944. J. Leroy Nickel, Jr., married but had no children; George W. Nickel had four children; Beatrice Nickel Morse had three children. These seven children and their descendants are the contingent remaindermen under the Henry Miller Trust.
 
 
 32
 J. Leroy Nickel, Jr., died in 1959. The other two children of Nellie Miller Nickel and J. Leroy Nickel, Sr., viz., George W. Nickel and Beatrice Nickel Morse, were also life beneficiaries of the trust. The record does not disclose whether or not they are living. Their respective children and more remote descendants were, as we have seen, contingent remainder beneficiaries of the trust.
 
 
 33
 The complaints allege that J. Leroy Nickel, Jr., Wooley, and Olsen, as trustees of the Henry Miller Trust, owned all the stock of the appellant corporation from 1944 to 1954. They elected its directors, selected its officers, and were in complete control of its affairs. In the appellant's original complaint, filed in 1954, in the Anderson case, J. Leroy Nickel, Jr., J. E. Wooley, and A. R. Olsen headed the list of the numerous defendants against whom restitution and damages were sought. On November 19, 1954, on motion of the appellant, the action was dismissed, without prejudice, as to the defendant A. R. Olsen. In the appellant's first amended complaint filed October 31, 1955, neither Wooley nor Olsen was named as a defendant, but J. Leroy Nickel, J., was so named. But on appellant's motion the action was dismissed, without prejudice, as to J. Leroy Nickel, Jr., on December 20, 1955. In appellant's second amended complaint, filed on April 17, 1958, neither J. Leroy Nickel, Jr., nor Wooley nor Olsen was named as a defendant. However, in the body of the second amended complaint, as in the two earlier versions of the complaint, J. Leroy Nickel, Jr., Wooley and Olsen, together with one James E. Fickett, then deceased, were named as the persons primarily responsible for the looting of the plaintiff corporation by putting in their own pockets profits which rightfully belonged to the corporation.
 
 
 34
 From what is recounted above, one gests the impression that if the cases are tried on the present amended complaints the trial will be a playing of Hamlet, without the presence of Hamlet. There will be much evidence as to the wrongs which J. Leroy Nickel, Jr., Wooley, Olsen, and Fickett did to the appellant corporation, and as to the manner in which they profited from those wrongs, but there can be no judgment requiring those primary wrongdoers, or their estates, to disgorge the profits and reimburse the appellant corporation.
 
 
 35
 If it be said that this is none of the business of the defendants against whom judgments are sought, that a wrongdoer cannot complain that another wrongdoer, also responsible for the same tort, is not sued for it, we suppose that this doctrine is not necessarily of universal application. The instant suit seeks to impose constructive trusts and liability for damages upon numerous persons who now have title to numerous properties. As to some of them, all that is charged against them is that they took title to the property when they knew that their predecessor in title had acquired title through a breach, by a director or agent of the appellant, of his fiduciary duty to the appellant. We think a court of equity would not be performing its role as such if it assumed that the defendants included in the second amended complaint are in pari delicto with the primary wrongdoers named, but not made defendants in the complaint. A court of equity might well conclude that it should not require the party least at fault to bear alone the entire responsibility for the wrong.
 
 
 36
 If it is suggested that these primarily guilty actors may have paid back to the appellant corporation what they stole from it, the court and the remaining defendants would be entitled to know that. To whatever extent such payments have been made, they are pro tanto credits on the claims made by the appellant against the remaining defendants. If settlements have been made and releases given to the primary wrongdoers for less than full compensation for their wrongs, or for less than would have been practically recoverable, that might well be of interest to the court and to the remaining defendants.
 
 
 37
 The complaint in the Anderson case, in paragraph XL, says:
 
 
 38
 'From and after 1927 and at all times herein mentioned until July 22, 1954, each of plaintiff's (appellant's) directors and officers was either an active party to the conspiracy set out in paragraph XIII or dominated by and subservient to the parties to said conspiracy, and plaintiff was a complete captive of said directors and officers and was therefore at all times completely powerless and unable to protect its interests and to seek a remedy for the wrongs and injuries herein above set forth until July 22, 1954.'
 
 
 39
 Beginning in 1927, which was when the operation of the conspiracy began, one of the three trustee-stockholder directors of appellant was J. Leroy Nickel, Jr. As we have seen, he is alleged to have been the ringleader of the conspiracy to defraud the appellant. His position and his activities continue down to 1954, when he was removed from his position as trustee and as a director and officer of appellant. From 1929 to 1944 Nellie Miller Nickel, and daughter of Henry Miller, was one of the three trustees of the Henry Miller trust. She was a director of the appellant corporation from 1941 to 1944. She was a life beneficiary of a one-half interest in the trust from 1916 until 1937, and the sole life beneficiary from 1937 until her death in 1944. Her husband, J. Leroy Nickel, Sr., was the third thustee of the trust from 1920 until 1937. As such, he was a stockholder of appellant corporation, of which he was a director from 1920 to 1937. He was a life beneficiary, with a one-half interest, in the trust. He died in 1937. J. E. Wooley succeeded him in 1937 as a trustee of the trust and as a stockholder and director of appellant. He was not a beneficiary of the trust nor a member of the Miller family, but, as we have seen, was active in the conspiracy to defraud the appellant, until he was removed in 1954. Upon the death of Nellie Miller Nickel in 1944, A. R. Olsen succeeded her as a trustee, and as a stockholder and director of appellant, and continued in those capacities until he was removed in 1954. Upon the death of his mother, Nellie Miller Nickel, in 1944, J. Leroy Nickel, Jr., became a life beneficiary of a one-third interest in the trust. He died in 1959.
 
 
 40
 As shown in the foregoing recitals, during the period 1927 to 1937, J. Leroy Nickel, Sr., was a life tenant of a one-half interest in the Henry Miller Trust. He was a director of appellant corporation and is alleged in the complaint to have been subservient to the will of the conspirators. Nellie Miller Nickel was the sole life tenant of the trust from 1937 to 1944. From 1941 to 1944 she was a director of appellant corporation and was subservient to the will of the conspirators. J. Leroy Nickel, Jr., was a director of appellant corporation from 1920 to 1954. Upon the death of his mother, Nellie Miller Nickel, in 1944 he became a life tenant of a one-third interest in the trust. He was, as we have seen, the ringleader in the conspiracy.
 
 
 41
 If there should be a recovery in this suit and an accounting by the defendants to the appellant for income, rents and profits earned by the defendants from the diverted lands, it would seem to follow that a part of the recovery should go to the estates of the life tenants who would have received the income, rents and profits if the appellant's land had not been fraudulently disposed of.
 
 
 42
 All the shares of the stock of the appellant were held by the three trustees of the Henry Miller Trust from as far back as 1920. They elected themselves, and some other persons, directors of appellant. In 1939 evidence of what is alleged to have been the conspiracy to despoil the appellant was presented to the board of directors in two successive meetings, was discussed, and the following resolution was adopted:
 
 
 43
 'Now, Therefore, Be it Resolved: That this matter be considered closed and no further investigation is required.'
 
 
 44
 Participating in this meeting were J. Leroy Nickel, Jr., A. R. Olsen, and J. E. Wooley, together with the other directors. Judge Sloss, a director, opposed the resolution. As we have seen, J. Leroy Nickel, Jr., was from 1920 to 1954 one of the three trustees of the Henry Miller Trust. J. E. Wooley was one of the trustees from 1937 to 1954. A. R. Olsen was the third trustee from 1944 to 1954.
 
 
 45
 Judge Wollenberg, in the district court, dismissed the appellant's complaints, assigning as one of his grounds of dismissal the fact that the owners of the appellant were shown by the allegations of the complaint to have knowingly consented to and ratified the alleged wrongs to the corporation. He said, 'As unanimous consent renders fraud impossible, no wrong has been done to the plaintiff.' For that reason, he said, the complaints failed to state causes of action.
 
 
 46
 In these appeals the appellant urges that the district court was in error in failing to give weight to the fact that the three shareholder directors of appellant held their title to the stock as fiduciaries, i.e. as trustees for the beneficiaries of the Henry Miller Trust. It recognizes that 'a person owning all the legal and equitable interest in a corporation may give those assets away if he desires to-- ignoring the corporate entity. He will not later, by use of the corporate entity, be heard to complain.' That a corporation is hurt, or destroyed, by the intended conduct of the owners of its shares, gives rise to no legal claims, either in the shareholders, or in the corporation as a legal entity. If all of the shares of a corporation were owned by trustees, and an agent of the corporation offered some of its assets or sale at what seemed to be less than the market price, and a purchaser cautiously inquired of each of the shareholders as to whether he was aware of and content with the price at which the assets were being offered, and was assured that the shareholders were content, and thereupon made the purchase, and was later sued by the corporation for having committed a wrong against it, he would, naturally, wonder what he had done that was wrong. If he was told that what was wrong was that the shareholders did not really own the shares, but owned them as trustees for other persons, he would wonder how he was supposed to have known that. And if, in fact, he did not know it, he would not be under any liability to anyone, and certainly not to the corporation with which he had dealt. If he did know of the trusts, thereby knowing that the stockholders were being generous with assets which they did not own, he would be liable, but the wrong would not be a wrong against the corporation but against the beneficiaries of the trust. If the trustees repented of their wrong, they might, as trustees, bring suit to recover the assets, and to restore them to their place in the corporation's stock, if that was where the court thought they belonged. Wetmore v. Porter, 92 N.Y. 76.
 
 
 47
 In the consideration of such problems, and of the particular problem of the instant cases, the corporation, as such is quite irrelevant. The questions are (1) did the trustees wrong the beneficiaries and (2) were the persons who dealt with the corporation purchasers without notice of the fact that the trustees were committing breaches of trust?It follows from what we have said that, in our opinion, the beneficiaries of the Henry Miller Trust are the persons, and the only persons, who have rights in the instant situation. The appellant corporation was the instrument by which the conspirators despoiled the assets of the trust. It is not in the position of a repentant trustee. It was not the trustee, it was the despoiled trust res. The interposition of the corporation in this litigation is of no conceivable use. The beneficiaries have always, in equity, owned the corporation and its assets. They still own them, depleted as they are alleged to be. There is no need for this inanimate entity, the corporation, to spring to life and speak for them. They can speak for themselves. When they do speak, and when those whom they accuse answer them, the dialogue will not be obfuscated by doctrines about whether, and to what extent, the corporate veil may be pierced. Questions as to who were beneficiaries at particular times, whether their conduct was such as to make recovery from their benefit inequitable, whether and to what extent they had already been paid by the wrongdoers, would seem to be highly relevant. In brief, the obvious advantage of having the real parties in interest in court will be present.
 
 
 48
 When the frauds of the then trustees were discovered, or were first acted upon, it was the beneficiaries of the trust who brought suit, in 1954, in the Superior Court of California, which suit resulted in the removal of the unfaithful trustees and the appointment of others. That direct, noncircuitous procedure could well have been followed by suits by the beneficiaries against the unfaithful trustees, their confederates, agents, the appellant corporation which had been an instrument in their fraudulent acts, and purchasers who took with notice. In such a suit a court of equity could have proceeded with confidence that it could do equity.
 
 
 49
 The judgments of the district court dismissing the complaints are affirmed.
 
 
 
 [1]
 The word 'complaint' in this opinion refers to the second amended complaint in the Anderson case, or the first amended complaint in the Chickering case, as the context will indicate