LEO L. HENKEL, Plaintiff-Appellant, *v.* PONTIAC FARMERS GRAIN CO., INC., Defendant-Appellee.

Fourth District   No. 14439

Opinion filed December 30, 1977.

Lawrence E. Johnson & Associates, of Champaign, for appellant.

Kenneth L. Strong, of Thompson & Strong, of Pontiac, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal comes to us as a result of a judgment in favor of the defendant in a small claim proceeding in the circuit court of Livingston

County. The matter was heard as a bench trial and no transcript was made other than certain tape recordings. While this has complicated our review, we have been furnished with a reasonably accurate abstract prepared by the defendant-appellee, together with excerpts from the tapes prepared by the plaintiff-appellant.

Plaintiff was the owner of extensive farm lands and they were tilled by his tenant on a 50-50 crop-share basis. During the harvest season of the autumn and early winter of 1972-1973, plaintiff and his tenant had a dispute concerning certain expenses of harvesting which the tenant claimed were due to him from plaintiff.

In October 1972, the tenant began making deliveries of grain from plaintiff's lands to the defendant. A schedule of these deliveries is as follows.

| | |
|---|---|
| October, 1972 | 1309.33 bu. beans |
| December 20, 1972 | 553.33 bu. beans |
| February 9, 1973 | 925.33 bu. beans |
| February 17, 1973 | 6129.00 bu. beans |
| | |
| November, 1972 | 2386.42 bu. corn |
| January, 1973 | 3613.21 bu. corn |
| December, 1972 | 1293.92 bu. corn |
| January, 1973 | 1656.78 bu. corn |
| January, 1973 | 2123.21 bu. corn |
| February, 1973 | 3872.50 bu. corn |
| February, 1973 | 1153.21 bu. corn |

According to defendant's manager, these were deliveries of the total crop, both landlord and tenant shares.

While it is not absolutely clear from the record, the evidence appears to be that plaintiff's share was delivered to defendant for sale, not for storage. Again, according to defendant's manager, payment to plaintiff for each delivery would have been due a day or two following the delivery and all payments due by March 1, 1973.

As indicated above, a dispute existed between plaintiff and his tenant (Everett Dronenberg) over certain expenses, and on January 18, 1973, the tenant caused a letter written by his attorney to be served on defendant. The text of that letter reads as follows:

"This is to notify you that Mr. Everett Dronenberg claims a lien upon crops harvested by him on behalf of Rev. Leo Henkel for 1074 bushels of grain harvested from the following described property:

The Southwest Quarter of Section 5, Township 28, Range 6

East of the Third Principal Meridian, Livingston County, Illinois.

Mr. Dronenberg's claim results from Rev. Henkel's refusal to reimburse him for expenses in combining and harvesting said crops and amounts to $1,470.00 plus interest and costs. Consequently, on behalf of Mr. Dronenberg we hereby demand that you withhold payment to Rev. Henkel for the delivery of said crops until such time as Rev. Henkel makes proper reimbursement to our client."

On January 20, 1973, another letter was served on defendant stating that the lien claim of January 18, 1973, was in error and "should have read 11,074 bushels of corn and 1800 bushels of soybeans."

As a result of these notices, defendant withheld payment to plaintiff of all funds until July 5, 1973, when it paid over $27,338.64, and September 12, 1973, when it paid over $2,000.

Meanwhile, on February 2, 1973, plaintiff sued his tenant in the circuit court of Livingston County for $26,000, alleging that the tenant had "maliciously converted to his own use and has concealed and secreted grains, livestock and profits due the plaintiff" under the terms of their lease. Defendant sought leave to intervene in that suit, but no action was taken on the intervener, and so far as the record shows, the case is still pending.

Finally, on April 3, 1975, plaintiff filed a small claim complaint against defendant demanding $629.16 representing interest on $27,338.64 from January 18, 1973, until July 5, 1973. As indicated above, the trial court found in favor of defendant.

There was a considerable amount of confusion in the initial stages of this litigation over exactly what was being claimed. The notice of January 18, 1973, did not state under what section of the statutes the purported lien was brought. In its early pleadings and before the trial court defendant kept referring to an "agister's" lien. Finally, before this court the parties cite section 50a of "An Act to revise the law in relation to liens" (Ill. Rev. Stat. 1975, ch. 82, par. 59a), which is entitled "Threshermen":

"Every person who, as owner or lessee of any threshing machine, clover huller, corn sheller or hay baler, threshes grain or seed, hulls clover, shells corn or presses hay or straw at the request of the owner, reputed owner, authorized agent of the owner or lawful possessor of such crops shall have a lien upon such crops, beginning at the date of the commencement of such threshing, hulling, shelling or baling, for the agreed contract price of the job, or, in the absence of a contract price, for the reasonable value of the services or labor furnished. Such lien shall run for a period of (8) months after the completion of such services or labor

notwithstanding the fact that the possession of the crops has been surrendered to its owner or lawful possessor, provided that such lien shall not be valid and enforceable against a purchaser of said crops from the owner or lawful possessor thereof unless the lien holder shall, previous to or at the time of making final settlement for such crops by such purchaser, serve upon such purchaser a notice in writing of the existence of such lien."

Several things are to be noted about the statute. First, it is a possessory lien, and continues "notwithstanding the fact that the possession has been surrendered." In the initial instance, the thresherman might retain possession of the crops to enforce his lien in the same manner as an innkeeper, a stabler or an agister, but the statute extends the force of the lien even after possession is parted by the lienor. Second, it is significant that the statute draws a distinction between "lawful possessor" and "purchaser." It is evident that the former refers to delivery of grain for storage under a warehousing arrangement and the "lawful possessor" would be the elevator under a warehouse receipt. The statute is silent as to how notice of the lien is expressed in such case. However, in the case of a "purchaser," specific notice provisions are made, and the reference to "final settlement" clearly contemplates the extension of the lien to the proceeds of sale.

■■ It therefore follows that the lien extends to the grain *in situ* in the elevator when it is placed there for storage but extends to the proceeds of sale when the grain is delivered to the elevator for sale. We consider this of considerable significance since one of the defendant's arguments is that it should not be charged with the duty of following the market in order to honor the lien. There was no necessity to follow the market. Under the plain language of the statute, the lien was upon the proceeds of sale.

■■■ Tenant Dronenberg's notice of lien and the amendment thereto were inartfully drawn. They purport to exert a lien upon grain *in situ* and upon more grain than actually belonged to the plaintiff. The amendment of January 20 purported to claim on 1,800 bushels of beans and 11,074 bushels of corn; these figures coincide almost exactly with the total deliveries through the month of January as shown on the table above, but only one-half of the grain belonged to the plaintiff. However, the notice went beyond the actual bushelage and stated a dollar-and-cents figure for the amount of the lien claimed. The notice was then good as against defendant whether it held the grain *in situ* as the "lawful possessor" or whether it held the cash as the "purchaser." Since the statute prescribes no particular form of notice in either case and no notice requirement at all in the case of storage, we deem Dronenberg's notice sufficient.

■■ We are likewise of the opinion that all parties are bound by the

terms of the notice, *i.e.*, 1,800 bushels of beans, 11,074 bushels of corn and/or $1,406. Defendant had no legal obligation beyond these amounts. It therefore follows that any withholding either of grain or money in excess of what was specified was culpable conduct on the part of defendant. Defendant was already holding $10,282.53 of plaintiff's money to cover a $1,406 lien and then extended this to 3,527.16 bushels of beans worth $15,979.84 and 2,512.85 bushels of corn worth $3,076.23, all of which came in after the notice was placed with it.

Defendant complains in its brief that it was faced with a lien claim on 1,800 bushels of beans and 11,074 bushels of corn and assumes an attitude of what-were-we-to-do. Defendant knew better than anyone else that the grain had been sold and the translation of bushels into dollars should not strain mentality unduly. It also complains that it had a duty of accurately judging the amount of the lien and the value of the crops. We have already stated that the lienor, as with any lienor, is bound by his claim and this was explicitly made known to defendant in dollars and cents. Even withholding double the amount as a safety factor would have come to only $2,812.00, or about 27% of what was already on hand. No reason, either in law or in common sense, required defendant to withhold plaintiff's entire crop proceeds.

The thresherman's lien is unlike other liens in that when extended to proceeds of sale, it becomes precisely ascertainable and severable. An ordinary lien, such as a mechanic's lien, is asserted against a parcel of eal estate as a part of the whole and is not severable until the real estate is sold. In the same manner, an agister's lien runs against an animal and is presumptively less than the total value of the animal; therefore, it cannot be severed until the animal is sold. However, in the case at bar, the lien was asserted against a cash fund, the grain already having been sold. The plaintiff here stood in the same position as the owner of the fee after a sale of real estate to foreclose a mechanic's lien—any surplus belongs to him and any withholding of that surplus is unlawful.

■■■ We turn lastly to the measure of damages. In its findings the trial court touched on the matter of interest as between plaintiff and his tenant, but said nothing concerning the interest claim against defendant. The claim made in this lawsuit is not precisely on all fours with most common damage claims. More than any other, it resembles a conversion. In such case the usual measure of damages is the value of the goods on the date converted plus legal interest. (*Janeway v. Burton* (1903), 201 Ill. 78, 66 N.E. 337.) Plaintiff has already received his money back; therefore, interest from January 18 to July 5, 1973, appears a proper measure of damages.

The judgment of the trial court is reversed and the cause is remanded to the circuit court of Livingston County with directions to vacate the

judgment in favor of defendant and enter judgment in favor of the plaintiff and against the defendant in the sum of $629.16 and costs.

Reversed and remanded with directions.

REARDON, P. J., and CRAVEN, J., concur.