**A. Verbena DANIELS, Liquidator of Northern Financial and Guaranty Company, Limited, Plaintiff,**

v.

**William L. POWELL, an individual, William Powell and Company, an Illinois Corporation, Westgate Properties, Incorporated, a Kentucky Corporation, and William Powell and Company, a Kentucky Corporation, Defendants.**

No. 84 C 1889.

United States District Court, N.D. Illinois, E.D.

March 14, 1985.

Robert N. Hermes, Gerald A. Saltarelli, Butler, Rubin, Newcomer, Saltarelli & Boyd, Michael J. Murphy, Lord, Day & Lord, Chicago, Ill., for plaintiff.

Daniel J. Pierce, John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

A. Verbena Daniels ("Daniels") filed a complaint against defendant William L. Powell ("Powell"), William Powell and Company, an Illinois corporation ("Powell & Co."), Westgate Properties, Incorporated, a Kentucky corporation ("Westgate"), and William Powell and Company, a Kentucky corporation ("Powell Kentucky") for conversion (Count I), for fraud (Count II), for the imposition of a constructive trust (Count III), and for violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* (Count IV) ("RICO"). On August 20, 1984, Judge Paul Plunkett of the United States District Court for the Northern District of Illinois entered an order denying defendants' motion to dismiss plaintiff's original complaint.[1] That order was subsequently modified on November 20, 1984 to grant the motion to dismiss Powell & Co. only from Count IV of the complaint.

On August 31, 1984, Daniels filed a motion pursuant to Fed.R.Civ.P. ("Rule") 56 for partial summary judgment on Count I. On November 1, 1984, this case was transferred to Judge Rovner. For the reasons stated below, partial summary judgment is granted in favor of Daniels against defendants Powell and Powell & Co.[2]

■ In order to prevail on a motion for summary judgment, a party has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1984). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Hermes v. Hein,* 742 F.2d 350 (7th Cir. 1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984). " 'A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.' " *Korf,* 726 F.2d at 1226, *quoting Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1306 (9th Cir.1982). In this case, the defendants have not set forth a single fact that disputes the facts propounded by the plaintiff. Thus, the facts set forth below are the facts as presented by the plaintiff.

### Origin and Nature of Daniels' Claim

Defendant Powell is the president, controlling stockholder, and a director of Powell & Co., which is engaged in various as-

---

1. On September 21, 1984 defendants Westgate and Powell Kentucky moved to quash service of summons alleging this Court's lack of personal jurisdiction. Judge Plunkett held ruling on that motion in abeyance.

2. This Court fully agrees with Judge Plunkett's rulings on the motion to dismiss. The decision on the liability of Westgate and Powell Kentucky to Daniels for conversion of the check will be determined after briefing on the motion to quash service of summons.

pects of the insurance business. Northern Financial & Guaranty Company, Limited ("Northern") is a wholly-owned subsidiary of Powell & Co. Northern was incorporated in Bermuda with Powell as its president. Powell & Co. has two other subsidiaries named as defendants here: (i) Powell Kentucky and (ii) Westgate.[3]

On June 3, 1983, the Supreme Court of Bermuda, on petition of a judgment creditor, Island Reinsurance Company Limited ("Island Re"), placed Northern in involuntary liquidation by the issuance of a Winding-Up Order ("Order"). The Order ended the authority of Powell and other Northern directors and officers to manage the company and vested all such power and authority, as well as title to the property owned by Northern, in Daniels. Daniels' formal title is the Official Receiver and Registrar of Company of the Government of Bermuda.

Powell was advised of the liquidation Order by telegram on June 10, 1983 and replied by letter that he would act on instructions of plaintiff's Bermuda counsel. Thus, defendants knew that title to all of Northern's property had vested in Daniels and that Powell no longer had any legal authority or power to control Northern's affairs or to sell assets belonging to Northern.

In defiance of the Order of the Bermuda Supreme Court, Powell determined that he would sell three parcels of land that had been owned by Northern prior to its liquidation. When Daniels requested deeds to the pieces of realty, Powell falsely represented to her that he was attempting, through negotiations with Northern's creditors, to remove Northern from liquidation. He also assured her that he would not dispose of any of Northern's property. Powell requested that Daniels take no action pending completion of his negotiations, and she acquiesced in that request.

Despite these promises to Daniels, Powell promptly proceeded to negotiate a sale of four adjacent parcels of property he and his corporations owned in Kentucky. Three of these parcels were owned solely by Northern. At a closing in November of 1983, over five months after the Order vested title in Daniels, Powell delivered to a third party buyer, Eaglestone, Inc. ("Eaglestone"), a resolution of the defunct Board of Directors of Northern. The resolution purportedly authorized Powell to convey title to the property. He also delivered to Eaglestone, along with instruments purportedly transferring title to the buyer, a sworn affidavit stating that Powell was authorized to act on behalf of Northern. At no time did Powell advise the directors of Eaglestone that Northern had been placed in liquidation by the Order of the Bermuda Supreme Court. In return for the property, Eaglestone delivered a check to Powell in the amount of $361,219.44 written to the order of Northern.[4]

Powell endorsed the check as president of Northern and deposited the check in a Northern account. Powell then caused the funds to be transferred from Northern's account to a Westgate account in the same bank. After the payment of some disbursements, the remaining funds were transferred by Powell to a Powell & Co. account at a bank in Chicago, Illinois. The remaining funds were used for the benefit of Powell and Powell & Co., including the payment of an alleged loan from Powell's father to Powell & Co. in the sum of $50,000,[5] as well as the payment of a loan in the amount of $170,000 plus interest to Powell & Co. from the Chicago bank.

In her complaint, which invokes both diversity and federal question jurisdiction, Daniels alleges that the defendants converted the check for $361,219.44 belonging to the estate of Northern in defiance of

---

**3.** In addition to defendant Powell, the directors of Powell & Co., Northern, and Westgate are his brother, Charles Powell, and his wife, Mary Powell.

**4.** Powell's attorney in Chicago resigned when he learned of the sale of the properties to Eagle-

stone. Defendants' Bermuda counsel soon followed suit.

**5.** Powell's father has not returned the note evidencing the loan to Powell & Co.

the Order of the Bermuda Supreme Court (Count I) and that they engaged in fraudulent activities to the detriment of the estate (Count II). Daniels also asks this Court to impose a constructive trust on the defendants for their breach of fiduciary duty (Count III). Finally, Daniels alleges that the defendants engaged in a scheme of racketeering and fraud in violation of the federal RICO statute (Count IV).[6]

Presently pending before this Court is Daniels' motion for partial summary judgment on the conversion count (Count I). Daniels' sole right to partial summary judgment for conversion of the check belonging to Northern's estate derives from the Order of the Bermuda Supreme Court. Accordingly, Daniels' claim for conversion depends on whether this Court should grant comity to that Order.

*Comity*

 Comity is to be accorded an act of a foreign court as long as that court is of competent jurisdiction and as long as the laws and the public policy of the forum state are not violated. *Hilton v. Guyot,* 159 U.S. 113, 202–03, 16 S.Ct. 139, 158–59, 40 L.Ed. 95 (1895); *Clarkson Co. v. Shaheen,* 544 F.2d 624, 629 (2d Cir.1976). When federal jurisdiction is founded on diversity, a federal court must look to the law of the state in which it sits to determine whether to accord comity to the act of a foreign jurisdiction. *American Optical Co. v. Curtiss,* 56 F.R.D. 26, 29 (S.D.N.Y. 1971). Illinois courts have granted comity to the law of a foreign jurisdiction in the absence of evidence that such recognition would be repugnant to its policy or prejudicial to its interest. *Hall v. Woods,* 325 Ill.

114, 156 N.E. 258 (1927). Illinois traditionally has favored recognizing and enforcing foreign law, and thus the mere fact that the foreign law is not identical to Illinois law is generally not sufficient to preclude comity. *Coleman v. American Sheet & Tin Plate Co.,* 285 Ill.App. 542, 2 N.E.2d 349 (1st Dist.1936).

The key inquiry is whether the Bermuda liquidation procedure offends the laws and public policy of Illinois. Defendants have not challenged the jurisdiction of the Bermuda Supreme Court over the liquidation of Northern. Nor have they alleged insufficient procedural due process protections in the application of Bermuda law. Recognizing that this Court may properly grant comity under these circumstances, and without citing any authority to the contrary, defendants nonetheless propose two reasons that this Court should deny comity to the Order of the Bermuda Supreme Court. Neither is persuasive.

*Finality of the Judgment*

 First, defendants suggest that since the Order is not a final judgment, this Court should not grant comity to it. An examination of the case law, however, clearly indicates that American courts have granted comity to foreign liquidation proceedings regardless of whether a final judgment has been entered.[7] Particularly where the foreign proceeding is a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed. *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976).

---

**6.** Defendant Powell & Co. has been dismissed from Count IV.

**7.** *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255 (S.D.N.Y.1979), *aff'd,* 614 F.2d 1286 (2d Cir.1979) (comity requires deferral to pending Canadian litigation proceeding); *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624 (2d Cir. 1976) (comity given Newfoundland court's designation of trustee even though the bankruptcy proceeding was still pending); *In re Colorado Corp.,* 531 F.2d 463 (10th Cir.1976) (court of appeals held that the bankruptcy court abused its discretion in not granting comity to decrees

of Luxembourg and Netherlands Antilles courts allowing foreign creditors' claims for purpose of voting for bankruptcy trustee); *IIT v. Cornfeld,* 462 F.Supp. 209 (S.D.N.Y.1978), *aff'd in part and rev'd in part,* 619 F.2d 909 (2d Cir.1980) (court recognized capacity of liquidators to represent the fund as explicitly authorized by a Luxembourg court); *Kenner Products Co. v. Societe Fonciere et Financiere Aqache-Willot,* 532 F.Supp. 478 (S.D.N.Y.1982) (court deferred to French bankruptcy court pending termination of bankruptcy proceeding in France).

Over 100 years ago, the Supreme Court granted comity to a Canadian statutory reorganization that required United States bondholders who had not assented to the reorganization to accept the substituted bonds of the Canadian corporation. *Canada Southern Railway Co. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883). In granting comity, the Court stated:

> A corporation of one country may be excluded from business in another country ... but, if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation. Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes.... *He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them,* and that it has no power to contract with a view to any other laws with which they are not in entire harmony.

*Id.* at 537–8, 3 S.Ct. at 370 (citation omitted) (emphasis added). Defendants in this case voluntarily invoked the protection of the laws of Bermuda when Powell and Powell & Co. chose to incorporate Northern in Bermuda. They cannot be heard to argue now that they should not be subjected to the burdens imposed by the Bermuda liquidations procedures simply because the liquidation Order is not a "final judgment."[8]

*Conflict of Interest*

Second, defendants argue that Daniels' alleged conflict of interest requires this Court to deny comity to the Order. Defendants assert that Daniels' potential conflict of interest, which derives from the substantial fees she may earn in her court appointed capacity as liquidator, is detrimental to Northern's creditors and shareholders. That same argument was considered and rejected in *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976), in which the court concluded that the numerous vague and conclusory charges of fraud by the liquidator were insufficient to deny comity to a Canadian liquidation proceeding. Even if the allegations of fraud and conflict of interest made here were true and properly substantiated, the proper forum to challenge such a conflict of interest by Daniels is the Bermuda Supreme Court. Defendants have not challenged the appointment of Daniels in the Bermuda Supreme Court. Nor have they set forth any specific instance of excessive or unreasonable fees or self-dealing by Daniels, either before this Court or the Bermuda Supreme Court.

Obviously, all liquidators of a bankruptcy corporation are potentially in a conflict of interest with its creditors and shareholders. Defendants' thesis blurs the distinction between a potential and an actual conflict of interest. Defendants' logic would require this Court to deny comity to a foreign liquidation order on the mere speculation that this potential conflict will ripen into an actual conflict, even though the defendants have not availed themselves of the adequate procedures available under Bermuda law to rectify any such actual conflicts.

In essence, defendant's request, if granted, would permit United States citizens to find haven in foreign countries for purposes of favorable incorporation and tax laws, and yet would immunize them from that same foreign law whenever it is bur-

---

**8.** *See also Cornfeld v. Investors Overseas Services,* 471 F.Supp. 1255 (S.D.N.Y.1979), *aff'd,* 614 F.2d 1286 (2d Cir.1979), in which the court granted comity to a Canadian liquidation proceeding. The court held that where the party challenging the granting of comity had originally incorporated the bankrupt corporation in Canada, he would be required to bring any challenges to the liquidator in the Canadian proceeding. *Id.* at 1261.

densome or inures to their disadvantage. This Court cannot support such a result. Absent specific, verifiable charges of fraud or self-dealing by Daniels, this Court will not deny comity to the Order of the Bermuda Supreme Court on the basis that Daniels is allegedly in a conflict of interest because she will receive fees from the estate for doing what she has been appointed to do, "wind up" the affairs of Northern.

■ Defendants' argument is also invalid because it asks this Court to ignore their own improper conduct. Defendants do not dispute that they violated the Order when they permitted funds of Northern to be used to satisfy the alleged debts of Powell & Co. and Westgate, thereby treating those alleged debts as preferences over Northern's creditors. At no time did defendants follow the orderly procedure laid down by Bermuda to establish that Powell & Co., Westgate, or Powell's father are authentic creditors of Powell & Co.[9]

■ It is an elementary rule of law that once a company goes into liquidation, a creditor's source of relief is to look to the liquidation proceeding. *Tidewater Plumbing Supply Co. v. Schimmel*, 296 Fed. 459 (4th Cir.1924). Under United States bankruptcy law, once the bankruptcy proceeding has begun, title and freedom to dispose of property formerly belonging to the bankrupt is relinquished. *Commercial Credit Business Loans, Inc. v. Northbrook Lumber Co.*, 22 B.R. 992 (N.D.Ill. 1982). The bankrupt party is without authority to continue to deal with his estate as before by creating new obligations and paying off old ones. *In re Richter*, 40

F.Supp. 758 (S.D.N.Y.1941); *In re Potteiger*, 181 Fed. 640 (E.D.Pa.1910).

■ An examination of the provisions of the Bermuda law relating to liquidation proceedings,[10] reveals that they are in substantial conformity with our own law, because Bermuda is a common law country.[11] The Bermudian liquidation process is closely and fully supervised by the Bermuda Supreme Court. Bermuda law provides a comprehensive and orderly procedure for liquidation that includes a procedure for appeal by any creditor rejected by the liquidator to the Bermuda Supreme Court. English Act §§ 243(3), 246(5) and Winding-Up Rule 108. The Winding-Up Order precludes creditors from seeing the debtor except with the prior consent of the court. English Act § 231. *Compare, e.g.,* 11 U.S.C. § 362. No act or decision of a liquidator can be directly challenged by any creditor, stockholder, or person aggrieved by applying to the Bermuda Supreme Court. English Act §§ 245(3), 246(5). *Compare, e.g.,* 11 U.S.C. § 1109. Further, the liquidator is required to account to the Bermuda Supreme Court and to render a final accounting in order to obtain his or her release. English Act as amended by §§ 245(3), 249, 273, and 342(1) of the Act, and Winding-Up Rules 171, 174. *Compare, e.g.,* 11 U.S.C. § 704. Under Bermuda law no preference is given to the claims of Bermuda citizens. *See* the Act and Winding-Up Rules *passim. Compare, e.g.,* 11 U.S.C. § 547. Preferences and fraudulent conveyances are subject to avoidance. *Id. Compare, e.g.,* 11 U.S.C. § 549.

**9.** Defendants argue that any "fraudulent" acts of Powell should be ignored because Powell is the equivalent of Northern's estate. This ignores the general rule that once a person creates a corporation, he may not ignore the existence of the corporation in order to avoid the disadvantages of the corporate structure, *Terry v. Yancey*, 344 F.2d 789 (4th Cir.1965).

**10.** All references and citations to Bermuda law were provided by an affidavit of Daniels' Bermuda counsel. Defendants have not challenged the accuracy of Daniels' exposition of Bermuda law.

**11.** Daniels' affidavit states: "The liquidation of Bermudian companies commenced prior to July 1, 1983 is governed by The Companies (Winding-Up) Act 1977 (the "Act") and accompanying Winding-Up Rules. Section 2 of the Act applies the laws in force in England on July 27, 1962, in relation to the winding-up of companies to Bermuda. The principal English statute incorporated in Bermuda law by Section 2 of the Act is the Companies Act 1948 (the "English Act")."

Once the Bermuda Supreme Court has issued a Winding-Up Order, the court may direct that all property of the company in liquidation be vested in a court appointed liquidator. English Act § 244. *Compare, e.g.,* 11 U.S.C. §§ 541, 451. Pursuant to Bermuda liquidation law only the liquidator, not a former officer of the company, has the power to compromise claims of creditors. English Act § 245(a)(e). *Compare, e.g.,* 11 U.S.C. § 544.

Based upon an analysis of Bermuda liquidation laws and their similarity with the revised Bankruptcy Act of 1978, and absent any claims by defendants that the Bermuda Supreme Court is not a court of competent jurisdiction to conduct the winding up of Northern, this Court finds that affording comity to the Bermuda liquidation proceeding does not violate the law or public policy of Illinois or of the United States.

*Conversion*

 A federal court sitting in diversity must look to the choice of law rules of the state in which it sits to determine what substantive law to apply.[12] *American Optical Co. v. Curtiss,* 56 F.R.D. 26, 29 (S.D. N.Y.1971). The conversion of the check at issue in this case began in Kentucky and ended in Illinois. An examination of the relevant case law of both states indicates that the law of both Kentucky and Illinois regarding the tort of conversion is in substantial agreement. Thus, no conflict exists and citation to the law of both states is appropriate where available.

 The essence of the tort of conversion is that the tortfeasor wrongfully exercises dominion and control over the personal property owned by another. *Illinois Central Railroad Co. v. Fontaine,* 217 Ky. 211, 289 S.W. 263, 267 (1926); *National Acceptance Co. v. Pintura Corp.,* 94 Ill.App.3d 703, 707, 50 Ill.Dec. 120, 123, 418 N.E.2d 1114, 1117 (2d Dist.1981); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979) (applying Kentucky law). In order to prevail in an action for conversion, the plaintiff must allege his immediate right of possession at the time of the conversion as well as the defendant's interference with the right to possession. *Kramer v. McDonald's System, Inc.,* 61 Ill.App.3d 947, 19 Ill.Dec. 21, 378 N.E.2d 522 (1978), *aff'd,* 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504 (1st Dist.1979). It is not essential that the defendant personally benefit from the conversion, because the essence of conversion is the deprivation to the owner. *National Acceptance,* 94 Ill. App.3d at 706, 50 Ill.Dec. at 123, 418 N.E.2d at 1117. Once there is a finding that conversion has occurred, the proper measure of damages is the value of the property at the time and place of conversion plus interest. *Amlung v. Bankers Bond Co.,* 411 S.W.2d 689 (Ky.1967); *Henkel v. Pontiac Farmers Grain Co.,* 55 Ill.App.3d 898, 13 Ill.Dec. 635, 371 N.E.2d 352 (4th Dist.1977).

 Although Illinois follows the common law rule which does not recognize an action for conversion of intangible rights, Illinois does "recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into a specific document." *In re Oxford Marketing, Ltd. v. Kallen,* 444 F.Supp. 399, 404 (N.D.Ill.1978); *People v. Roth, Inc.,* 412 Ill. 446, 107 N.E.2d 692 (1952).[13]

Where a corporate officer or director actively participates in the conversion on behalf of a corporation, he is personally liable, even if he does not personally benefit. *National Acceptance,* 94 Ill.App.3d at 706,

---

**12.** In their memorandum in support of their motion to dismiss, defendants suggest that the state claims must be dismissed because the federal RICO claim is insufficient and therefore cannot support pendent state claims. Defendants' motion to dismiss has been denied. Even if it had been granted, however, this Court would have diversity jurisdiction over the state claims under 28 U.S.C. § 1332.

**13.** Apparently, Kentucky has not ruled on the availability of a cause of action for conversion of a check. All jurisdictions that have examined the issue, however, appear to have recognized such an action. See Prosser, *Law of Torts* 82 (4th Ed.1971).

50 Ill.Dec. at 123, 418 N.E.2d at 1117; *United Society of Shakers v. Underwood,* 72 Ky. 609 (9 Bush) (1873). In *National Acceptance,* both a corporation and its officer were held liable for conversion where the officer endorsed several checks and deposited them in the corporate bank account. *National Acceptance,* 94 Ill.App.3d at 707, 50 Ill.Dec. at 123, 418 N.E.2d at 1117. The corporate officer held liable was the sole shareholder. *Id.*

In this case Daniels, by the Order, had a right to immediate possession of all of Northern's "property." That Order was still in effect when Powell, without the permission of either Daniels or of the Bermuda Supreme Court, endorsed and deposited the check. Although it is unnecessary to show that defendants benefited from the conversion, the defendants admit that the funds were used to pay off debts of Westgate and of Powell & Co. In fact, defendants repeatedly justify their unorthodox conduct because their acts purportedly benefited the shareholders and creditors of Northern.[14] Accordingly, this Court holds that Powell and Powell & Co. converted the check.

Defendants assert four arguments to demonstrate that summary judgment for conversion is inappropriate. First, defendants suggest that their actions were necessary to protect Northern's creditors and shareholder due to Daniels' alleged conflict of interest. Thus, they contend, this Court should not treat the removal of the proceeds of the check from Northern's account to Powell & Co., and the subsequent disbursements, as conversion.

Defendants do not bother to cite any authority for this novel limitation of responsibility, and rightly so, for there is none. Essentially, defendants ask this Court to sanction their refusal to recognize and conform their conduct with the Order of the Bermuda Supreme Court, although they admit that they were fully cognizant of the limits imposed by that Order. Instead, they argue that the ends justify the means. Admitting that the sale of the properties was "unorthodox," they justify their actions as "unquestionably in the best interests of the creditors" because, they contend, those creditors "have already been paid *100 cents on the dollar* for their claims." Yet elsewhere in their briefs defendants admit that the claim of at least one of Northern's creditors, Island Re, has yet to be satisfied. Defendants thus justify ignoring the Order of the Bermuda Supreme Court on the speculative assertion that Daniels would have looted the assets of Northern by running up excessive fees in her role as liquidator.[15]

Under defendants' logic, a sole shareholder and officer of a bankrupt corporation is justified in taking the law into his own hands by seizing all assets belonging to the bankrupt's estate if he believes that a court-appointed and supervised liquidator might loot the estate by charging outrageous or excessive fees.[16] Defendants, in essence, ask that this Court recognize "necessity," as an affirmative defense to conversion. Any alleged "necessity," however, could have been addressed by the Bermuda Supreme Court. The defendants' failure to seek relief in the appropriate forum precludes them from raising "necessity" as a defense here.

Second, defendants argue that the motion for partial summary judgment must fail because one cannot convert real estate

---

14. The defendants do not dispute, however, that they have not satisfied the claims of at least one of Northern's creditors, Island Re.

15. Typical of defendants' vague and unsubstantiated allegations is the following: "Her intention is obvious. It is not to marshal the assets of the corporation for the benefit of the creditors. Her intention is to gain control of a fund which she can then consume to the disadvantage of the estate's beneficiary."

16. In justifying their actions, defendants state that "Powell did for free what Daniels would have charged the estate to do. The only 'damage' or 'loss suffered' was Daniels inability to generate fees .... Powell could even be said to have been acting for Daniels in a representative capacity. He did her job thereby entitling him to fees...."

as a matter of law. Defendants further claim that Powell was incapable of transferring title to the real estate to Eaglestone, and, therefore, Daniels still has title. In the alternative, defendants assert that the Order of the Bermuda Supreme Court had no extraterritorial effect, and, therefore, Powell had every right to convey the properties. These arguments must fail because this action is not for conversion of real estate, but for conversion of the check made payable to Northern and eventually deposited in a Powell & Co. account by Powell. Moreover, Daniels is not required to treat the sale as a nullity. *Wilson v. Moore,* 7 Ky.Opin. 510 (1873). Nor is Daniels limited to one cause of action. Fed.R. Civ.P. 8(a).

Third, defendants argue that the unanimous consent doctrine bars recovery on a theory of conversion by one standing in the shoes of a corporation for acts undertaken with the unanimous consent of the shareholders and officers. This argument presupposes that the actions of the corporation involve property that the corporation owns. The defendants' citation to *Hotel v. Wade,* 7 Otto 13, 97 U.S. 13, 24 L.Ed. 917 (1878), is, therefore, inapposite because in *Wade* the corporation was not in liquidation and was acting within its powers. By contrast, here the Order divested Powell of all authority to sell any assets belonging to Northern's estate.

■ Similarly, the fact that a sole shareholder may give away corporate assets, ignoring the corporate entity, is simply irrelevant once the corporation is in liquidation and title has passed to the liquidator. *Miller & Lux, Inc. v. Anderson,* 318 F.2d 831, 838 (9th Cir.1963), *cert. denied,* 375 U.S. 986, 84 S.Ct. 517, 11 L.Ed.2d 473 (1964). Also irrelevant to this motion are cases dealing with transactions occurring before the corporation was in liquida-

tion. *See, e.g., Field v. Lew,* 184 F.Supp. 23 (E.D.N.Y.1960), *aff'd sub nom. Field v. Bankers Trust Co.,* 296 F.2d 109 (2d Cir. 1961) *cert. denied,* 369 U.S. 859, 82 S.Ct. 948, 8 L.Ed.2d 17 (1962).[17]

Finally, defendants argue that partial summary judgment for conversion should be denied because the monies were used merely to satisfy claims of Northern's creditors. This argument is unavailing for several reasons. First, regardless of the ultimate disposition of the monies, Daniels, not Powell was vested with authority to settle claims against Northern. Second, by paying claims of "creditors" who had not applied to the Bermuda Supreme Court, Powell gave them preference over legitimate claims in violation of the Order and Bermuda law. Thus, claims of Northern's legitimate creditors may yet remain unsatisfied. Indeed, Island Re's claims have yet to be satisfied.[18]

### Conclusion

This Court finds abhorrent the notion, advanced in essence by the defendants, that it should sanction conduct that is in defiance of an order entered by a foreign court having jurisdiction over the parties and of the subject matter. Any challenge to the handling of Northern's estate by Daniels should have been brought in the Bermuda Supreme Court. Because there is no genuine issue of material fact as to Count I, Daniels is entitled to judgment on that Count as a matter of law against defendants Powell and Powell & Co. in the amount of $361,219.44 plus interest.

**17.** Defendants' reliance on *In re REA Express, Inc.,* 412 F.Supp. 1239 (E.D.Pa.1976), is equally misplaced. That case dealt with the liability under federal antitrust law and Delaware corporate law of a holding company to its wholly-owned subsidiary for breach of fiduciary duty.

The company was not in liquidation and no creditor interest needed to be vindicated.

**18.** The defendants' argument that Daniels' conversion claim is barred because the underlying claim has been compromised and settled is simply false. Island Re is still an unpaid creditor.