(No. 51026.—)

ARNOLD I. KRAMER, Appellant, v. McDONALD'S
SYSTEM, INC., *et al.*, Appellees.

*Opinion filed October 2, 1979.—Rehearing
denied November 30, 1979.*

Donald L. Bertelle, of Chicago, for appellant.

Foran, Wiss & Schultz, of Chicago (Richard G. Schultz and Jeff D. Harris, of counsel), for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

This cause was brought in the circuit court of Cook County by Arnold I. Kramer, plaintiff, as a declaratory judgment action seeking a declaration of the rights of the parties in certain equipment, inventory, accounts receivable, fixtures and furniture incidental to the operation of a McDonald's restaurant in Midland, Texas. Moreover, Kramer sought a determination that the defendants, McDonald's System, Inc., McDonald's Corporation and a subsidiary, Franchise Realty Interstate Corporation (McDonald's), the defendants, had converted property in which Kramer had a security interest when McDonald's permitted the Bank of River Oaks (the bank) to sell the equipment at public sale and when McDonald's leased the premises to a second franchisee.

The circuit court denied McDonald's motions to dismiss and for summary judgment and granted Kramer's motion for summary judgment against McDonald's for $104,784.41. On appeal, the appellate court of Illinois affirmed that part of the lower court's judgment denying McDonald's motion to dismiss the complaint, reversed the order granting Kramer summary judgment, and rendered summary judgment in favor of McDonald's. (61 Ill. App. 3d 947.) We thereafter granted Kramer's petition for leave to appeal. We affirm the judgment of the appellate court, though we base our decision on different reasons.

On December 9, 1974, Ralph Baker entered into a franchise license agreement and a lease agreement with McDonald's. Under the terms of the agreements Baker was given a 20-year leasehold interest in a McDonald's hamburger restaurant in Midland, Texas. Prior to commencing operation of the restaurant, Baker obtained a loan from the bank for $107,000. Baker granted a security interest in the restaurant equipment he had purchased to the bank. It was agreed that McDonald's would subordinate its land-

lord's lien to the bank's security interest. The landlord's subordination agreement also specified that if Baker defaulted under the security agreement with the bank, McDonald's would consent to the removal of the equipment from the restaurant, or else McDonald's, at its option, could assume Baker's payments to the bank. In December 1974 the bank perfected its security interest when it filed financing statements with the Secretary of State of Texas and the appropriate recorder of deeds.

On January 17, 1975, Baker, in order to obtain additional working capital, entered into several agreements with Arnold Kramer. On that day the following documents were executed: (1) a limited partnership agreement creating the B/K Limited Partnership, with Baker and his wife as general partners, and Kramer and four others as limited partners; (2) a landlord subordination agreement, similar to the one entered into with the bank, but with the additional provision that Kramer's security interest would be subordinate to the bank's; (3) a conditional assignment agreement, providing: (a) that in the event of Baker's default, McDonald's would consent to Kramer's removal of the collateral, subject to the bank's prior security interest; (b) that McDonald's had an inferior lien to Kramer's security interest; and (c) that if Baker defaulted, all his right, title and interest in and to the lease and license agreements would be assigned to McDonald's; (4) a chattel mortgage in favor of Kramer; (5) a judgment note in the amount of $90,000 made by Baker and his wife, with Kramer as payee; and (6) a note and security agreement evidencing a principal debt of $90,000 and a finance charge for interest over the life of the note of $85,823.80. The security agreement granted a security interest in the restaurant equipment to Kramer, subject to the prior security interest of the bank in the same collateral. The security agreement also granted a security interest to Kramer in the franchise license and the lease with

McDonald's, as well as in the inventory, accounts receivable, proceeds and products therefrom, machinery, fixtures and furniture whether presently owned or after acquired by Baker. The security agreement and financing statement were duly filed in Texas with the Secretary of State and the Midland County recorder of deeds.

On January 22, 1975, the limited partners executed an indemnification agreement which also designated Kramer as their "nominee to appear as 'Lender' on all agreements with [McDonald's] and as payee in all notes executed by [the Bakers]." Also contained in this agreement was a provision that the limited partners would "collect interest in their capital contribution only to the extent their capital contribution is not returned to them by payment of the Promissory Note given to guarantee the return of said capital contribution." Additionally the agreement provided that Kramer would act as the representative of all of the limited partners in any litigation.

The certificate of limited partnership filed with the recorder of deeds of Cook County, Illinois, on February 3, 1975, reveals in paragraph 7 that the amount of cash "contributed" by the limited partners totaled $90,000, with Kramer contributing $54,000 and each of the other four limited partners contributing $9,000. Paragraph 8 states: "No additional contributions are to be made by any Limited Partner."

Baker commenced business in March 1975, and closed the business in January 1976. He sent a telegram to McDonald's on January 22, 1976, informing it he would abandon the restaurant January 24, 1976, at 12:01 a.m. On the same day he sent a telegram to Kramer and the other limited partners informing them they had until 11:59 p.m. on January 23, 1976, to take over the restaurant. Kramer did not reply. McDonald's delivered a letter to Baker on January 23, 1976, stating it would take over the restaurant, sell it and distribute the proceeds to

Baker and his creditors.

Baker did not turn over the restaurant to McDonald's but did cease to operate it. On January 26, 1976, McDonald's notified Baker he was in default under the license and lease agreements. McDonald's eventually took possession of the restaurant. Kramer then notified McDonald's that Baker was in default and demanded payment of the February installment from McDonald's. McDonald's subsequently entered into a franchise and lease agreement with Victor Moore, who began to operate the restaurant in April 1976.

Kramer filed the instant action in the circuit court of Cook County on April 12, 1976, seeking a declaratory judgment concerning his rights in the property in the restaurant and alleging that the defendant McDonald's unlawfully converted his property.

The bank had notified Baker on February 4, 1976, that he was in default under the security agreement. Thereafter the bank gave public notice that a sale of the equipment in Midland, Texas, would occur on May 20, 1976. Upon receiving his notice of the sale, Kramer amended his complaint on May 18, 1976, adding the bank as a defendant, seeking a temporary restraining order to stop the sale, and asking for other relief. The court issued the temporary restraining order on May 18 and vacated it the next day, upon motion of the bank. The sale occurred as scheduled, with both Baker and Kramer represented. The bank was the only bidder and purchased the equipment for $104,000. The next day, May 21, 1976, McDonald's purchased the equipment from the bank for $113,367.90, the total indebtedness Baker owed the bank.

Kramer filed a second amendment to his complaint on November 3, 1976, alleging that McDonald's and the bank had acted in concert to convert the property in which Kramer had a security interest. Because the orders appealed from involve only Kramer and McDonald's, the

bank is not a party to this appeal.

The appellate court held that the law of Texas pertaining to conversion is applicable herein. The court applied the most significant relationship rule set forth in *Ingersoll v. Klein* (1970), 46 Ill. 2d 42. Since we decide the issue involved in this case under the Uniform Limited Partnership Act (ULPA) as adopted in Illinois, we need not decide which State's conversion principles apply. Ill. Rev. Stat. 1977, ch. 106½, pars. 44 through 73.

Kramer contends that summary judgment was improperly granted by the appellate court in favor of McDonald's on the basis that section 13 of the ULPA absolutely prohibits a limited partner from taking collateral as security for a loan to the limited partnership. Kramer argues that the proper construction of this section is that a limited partner may take collateral as security for a loan unless, at the time the loan is made, the assets of the partnership are insufficient to discharge partnership liabilities to persons not claiming as general or limited partners. There is authority for this construction of section 13: *A.T.E. Financial Services, Inc. v. Corson* (1970), 111 N.J. Super. 254, 268 A.2d 73; *Hughes v. Dash* (5th Cir. 1962), 309 F.2d 1. See Kratovil and Werner, *Fixing Up the Old Jalopy—The Modern Limited Partnership Under the ULPA,* 50 St. John's L. Rev. 51, 62-66 (1975).

But the issue herein is not whether a limited partner may secure a loan but whether a limited partner may secure his capital contribution. We conclude that the answer is that he may not. Since there are no genuine issues of material fact, we decide as a matter of law that the appellate court properly entered summary judgment in favor of McDonald's.

We think that the pleadings, depositions, affidavits and documents on record clearly evince that the $90,000 was intended as a contribution to the capital of the limited partnership. The word "contributions" as it is used in the

ULPA is limited to the contribution made by a limited partner at the time of the formation of the partnership for the benefit of the partnership's creditors. *Silvola v. Rowlett* (1954), 129 Colo. 522, 527, 272 P.2d 287, 290.

Kramer's transfer to Baker of $90,000 was made at the time of the formation of the limited partnership. This is revealed in the limited partnership agreement executed on January 17, 1975, the certificate of limited partnership, as well as in the mutual agreement indemnifying the limited partners, signed on January 22, 1975.

The important distinction between the initial capital contribution and subsequent transfers of funds to the partnership has been noted elsewhere by courts which have been asked to decide whether limited partners may take collateral security for loans made to the partnership. Those courts have been careful to note that the initial contribution had been made previously, and that it was subsequent advances of money over which issue was joined. *Park Cities Corp. v. Byrd* (Tex. Civ. App. 1975), 522 S.W.2d 572, *rev'd on other grounds* (Tex. 1976), 534 S.W.2d 668; *Hughes v. Dash* (5th Cir. 1962), 309 F.2d 1; *Clapp v. Lacey* (1868), 35 Conn. 463.

Additionally, after the limited partnership was formed and, indeed, even after the instant action was commenced, Kramer still continued to treat the $90,000 as a capital contribution. The partnership income return for 1975 (IRS Form 1065) was signed by Kramer on June 12, 1976, two months after filing this action. On schedule K-1 of form 1065 Kramer stated that his deductible share of the partnership's loss for 1975 of $91,364.47 was $43,067.00. He also claimed a share in the investment tax credit on partnership property taken by the partnership. Clearly then, the $90,000 payment from Kramer to Baker was intended to be, was treated by the parties as, and must be considered to be, an initial capital contribution to the limited partnership. Accord, *Salsul Co. v. Kohlmeyer* (La.

App. 1976), 325 So.2d 858.

A limited partner is prohibited from taking collateral to secure repayment of his capital contribution. (Ill. Rev. Stat. 1977, ch. 106½, par. 59(1).) To do so would give him an unfair priority over the creditors of the partnership contrary to the express provisions of section 16(1) of the ULPA:

> "(1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until
>
> (a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them.
>
> (b) The consent of all members is had, unless the return of the contribution may be rightfully demanded under the provision of paragraph (2), and
>
> (c) The certificate is cancelled or so amended as to set forth the withdrawal or reduction." Ill. Rev. Stat. 1977, ch. 106½, par. 59(1).

A limited partnership interest is in the nature of an investment. (*Klein v. Weiss* (1978), 284 Md. 36, 52, 395 A.2d 126, 136.) Through his contribution, the limited partner becomes entitled to share in the profits and losses of the partnership, though his share of the losses will not exceed the amount of capital initially contributed to the enterprise. (*Klein v. Weiss* (1978), 284 Md. 36, 52, 395 A.2d 126, 135.) However, when the limited partner makes the contribution, he is placing that amount at risk. He is not permitted to insure that risk or to guarantee a return to himself by taking some form of security. He may not vie with creditors for the assets available to pay the partnership's obligations. "The ULPA was designed to prevent illegal competition between the limited partners and creditors of the partnership for the assets of the partnership." (*Hughes v. Dash* (5th Cir. 1962), 309 F.2d 1.) It would therefore defeat the purpose of the ULPA to

permit Kramer to enforce a security interest against the property purchased by the partnership to operate the restaurant.

We therefore hold that Kramer is prohibited by the express provisions of section 16 of the ULPA from accepting collateral as security for his capital contribution. The legal effect of the holding accords with the holding of the appellate court only to the extent that it held that Kramer was not a secured creditor, that he possesses no enforceable interest in the collateral, and that, therefore, Kramer may not maintain an action for conversion of the collateral. In light of our determination that the $90,000 is a capital contribution, we disagree with the appellate court's statement that the promissory note is enforceable, and hold that it is not. Our holding renders it unnecessary to decide issues involving the default provisions of article 9 of the Uniform Commercial Code or the principles regarding conversion under Illinois law.

Kramer contends that because McDonald's is not a creditor of the limited partnership, it does not have standing to raise the prohibitory sections of the ULPA as an affirmative defense. We find this contention to be without merit. It is unclear from the record whether McDonald's is a creditor or not. However, there have been repeated avowals by counsel for McDonald's that it is owed $26,511.75 by the partnership for unpaid rent, service fees, real estate taxes and moneys advanced by McDonald's to pay Baker's employees. In any event, we think the question whether McDonald's is a *bona fide* creditor immaterial since we agree with the appellate court's statement that section 43(4) of the Civil Practice Act recognizes "an instrument or transaction [that] is either void or voidable in point of law, or cannot be recovered upon by reason of any statute," as an affirmative defense which "seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint."

(*Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 961, citing Ill. Rev. Stat. 1977, ch. 110, par. 43(4).) Thus, McDonald's is imbued with standing to raise the ULPA as a defense to Kramer's allegations of conversion.

McDonald's argues that it is entitled to be reimbursed by Kramer for attorneys' fees and costs incurred in this action. McDonald's cites section 13 of the Uniform Partnership Act (UPA) in support of its contention. Section 13 provides that where a partner, through a wrongful act or omission in the ordinary course of the partnership, causes loss or injury to any person, the partnership is liable therefor to the same extent as the parties so acting or omitting to act. Ill. Rev. Stat. 1977, ch. 106½, par. 13.

McDonald's argues that section 13 applies to this case by way of section 6(2) of the UPA, which states that the UPA shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent. (Ill. Rev. Stat. 1977, ch. 106½, par. 6(2).) McDonald's states that under the lease and license agreements with Baker, it was agreed that Baker would pay McDonald's attorneys' fees if Baker defaulted under either of those agreements. McDonald's is attempting to attribute Baker's default to Kramer. Moreover, McDonald's argues that Kramer, as well as Baker, was involved in a wrongful act, namely, concealing the existence of the limited partnership from McDonald's. We disagree with McDonald's contentions.

We think that section 13 of the UPA is inconsistent with section 7 of the ULPA. (Ill. Rev. Stat. 1977, ch. 106½, par. 50.) Section 7 provides that a limited partner shall not be liable as a general partner unless he takes part in the control of the business. There is no indication that Kramer ever took part in the operation of the restaurant business. In fact, the record discloses that when, in

January 1976, Baker offered Kramer the opportunity to take over the business, Kramer declined to do so. Thus, Kramer's exposure to liability as a limited partner is limited solely to his capital contribution. *Klein v. Weiss* (1978), 284 Md. 36, 52, 395 A.2d 126, 135.

Moreover, we reject McDonald's contention that Kramer is liable for attorneys' fees and costs in the same way that a principal is liable for the deceit of his agent where the principal has authorized or participated in the deceit. A limited partner is neither a partner nor a principal in the business or transactions of the partnership. His liability is to the partnership in the form of his capital contribution, and not to the creditors. (6 Uniform Laws Annotated, Uniform Limited Partnership Act, Official Comment to section 1 (master ed. 1969).) Therefore, Kramer is not liable to McDonald's for the attorneys' fees and costs incurred by McDonald's.

Accordingly, for the reasons given, the judgment of the appellate court granting summary judgment in favor of McDonald's and denying summary judgment to Kramer is affirmed.

*Judgment affirmed.*