In re COLUMBIA REALTY ASSOCIATES, LTD., Manufactured Housing Associates, Ltd., Debtors.

Joel A. SCHECHTER, Trustee, Plaintiff,

v.

Sheldon DROBNY and Jack Nortman, Defendants.

Bankruptcy Nos. 80 B 6801, 80 B 6802 and 83 A 766.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 20, 1987.

Joel A. Schechter, Chicago, Ill., trustee.

Nick J. DiGiovanni, Lord, Bissell & Brook, Chicago, Ill., for defendants.

James S. Gordon, Edward Slovick, Ira Bodenstein, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

 This cause coming on to be heard upon the Motion to Disqualify the law firm of Lord, Bissell & Brook from representing Defendants SHELDON DROBNY and JACK NORTMAN, this motion ·having been filed by Plaintiff and Trustee, JOEL A. SCHECHTER, represented by JAMES S. GORDON, LTD., and upon the response filed thereto by Defendants, SHELDON DROBNY and JACK NORTMAN, represented by LORD, BISSELL & BROOK, and the Court, having considered the record in this case and the pleadings on file, and having afforded the parties an opportunity to be heard, and having examined the memoranda of law filed by the parties in support of their respective positions, and being fully advised in the premises; [1]

The Court Finds:

1. On June 3, 1980, Debtors COLUMBIA REALTY ASSOCIATES, LTD. [Columbia] and MANUFACTURED HOUSING ASSOCIATES, LTD. [MHA] filed separate petitions for relief under Chapter 11 of the Bankruptcy Code. On October 14, 1980, Debtors' cases were consolidated for joint administration. On May 27, 1982, Debtors' Chapter 11 cases were converted to Chapter 7 and a Trustee, Joel A. Schechter, was subsequently appointed.

2. Columbia and MHA were limited partnerships formed under the laws of the State of Illinois. Sheldon Drobny and Jack Nortman were limited partners of both Columbia and MHA. On March 11, 1983, the Trustee filed the above-entitled complaint against Defendants Drobny and Nortman under the Uniform Limited Partnership Act, Ill.Rev.Stat. 106½ § 50.[2] The Trustee alleges that Drobny and Nortman asserted substantial control over the businesses of Columbia and MHA and therefore should

---

**1.** Counsel for the parties appeared before Bankruptcy Judge Edward B. Toles, who has since retired. Upon the suggestion of the parties, Judge Toles took this matter under advisement and his decision was to have been based solely on the pleadings and affidavits filed. In circumstances such as these, and in the absence of an evidentiary hearing before Judge Toles, the undersigned is authorized pursuant to Bankruptcy Rule 9028, and relevant case law, *Townsend v. Gray Line Bus Co.*, 767 F.2d 11 (1st Cir.1985); *Whalen v. Ford Motor Credit*, 684 F.2d 272 (4th Cir.1982) *cert. denied* 459 U.S. 910,

103 S.Ct. 216, 74 L.Ed.2d 172 (1982), to render a decision on this motion based on the pleadings and affidavits filed by the parties.

**2.** Ill.Rev.Stat. 106–½ § 50 provides as follows:
§ 50. Limitation of liability
A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business.

be liable as general partners. Their control allegedly continued during the period when Columbia and MHA operated as debtors-in-possession.[3] Persons who exercise such control are deemed as general partners under Illinois law, despite their designation as special limited partners. *Kramer v. McDonald's System, Inc.,* (1979) 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504. The Trustee, therefore, argues that Drobny and Nortman are jointly and severally liable for the debts of Columbia and MHA as general partners. The Trustee seeks to recover from Drobny and Nortman all losses suffered by these estates. In addition, the Trustee insists that Drobny and Nortman be required to pay all claims allowed in these bankruptcy proceedings.

3. Drobny and Nortman are represented by the law firm of Lord, Bissell & Brook [Lord-Bissell]. On March 11, 1986, the Trustee filed a motion seeking to disqualify Lord-Bissell on the grounds that a former partner of that law firm, James A. Chatz, represented Columbia and MHA while they were operating in Chapter 11. The facts surrounding this disqualification issue appear as follows:

A. Lawrence Cooper was the attorney for Debtors at the time of the filing of their Chapter 11 petitions. On October 5, 1981, Mr. Cooper was granted leave to withdraw and an order was entered granting leave to the Debtors to retain James A. Chatz and Dennis E. Quaid of Chatz, Berman, Maragos, Haber and Fagel [Chatz-Berman] as their attorneys. On that same date, Messrs. Chatz and Quaid filed their appearances on behalf of Debtors.[4]

B. On March 16, 1982, Chatz-Berman filed an application to withdraw as counsel for Debtors. The existence of an "irreconcilable conflict with the Debtors-In-Possession concerning the appropriate course of action in these proceedings" was alleged by Chatz-Berman as the principal reason behind its efforts to withdraw as Debtors' counsel. On May 27, 1982, an order was entered allowing James A. Chatz and Dennis E. Quaid to withdraw their appearances on behalf of Debtors.

C. Subsequent to the withdrawal of Messrs. Chatz and Quaid, James A. Chatz left Chatz-Berman and became a partner and head of the bankruptcy department at Lord-Bissell. The move by Chatz occurred sometime after the withdrawal of Chatz-Berman as counsel for Debtors, May 27, 1982, but prior to the filing of the Trustee's above-entitled complaint, March 11, 1983.

D. On April 11, 1983, Nick J. DiGiovanni, an attorney at Lord-Bissell, filed an appearance on behalf of defendants Drobny and Nortman in the adversary proceeding filed by the Trustee.

E. On March 11, 1986, the Trustee filed a disqualification motion asserting that the continued representation of these defendants by Lord-Bissell creates a conflict of interest. The essence of the Trustee's motion seems to be that inasmuch as the Trustee is seeking to establish that defendants are jointly and severally liable for the debts of Columbia and MHA, the Debtors' interests and the interests of Drobny and Nortman are adverse. As the representative of former clients of Mr. Chatz, the Trustee objects to his representation of new clients whose interests are adverse to

---

**3.** Listed below are some of the acts allegedly committed by Drobny and Nortman as set forth in the Trustee's adversary complaint.

 1. Maintained the primary bank accounts of the partnerships as signatories thereon.

 2. Exercised exclusive control of all or substantially all of the funds of the partnerships.

 3. Determined which of the obligations of the partnerships were to be paid, at what time and in what amount.

 4. Maintained the books of account of the partnerships.

 5. Negotiated a modification of the terms of a first mortgage on all of the real estate owned by Columbia with the holder of said mortgage.

 6. Rejected a written offer to purchase all of the real estate owned by MHA without submitting said offer to the limited partners as required by the partnership agreement.

**4.** The record indicates that Chatz-Berman filed pleadings on Debtors' behalf as early as July, 1981. In their application to substitute counsel, Chatz-Berman sought to have their appearance effective as of July 27, 1981; this provision, however, was not contained in the October 5, 1981 order.

those of the estates. The Trustee states that to the extent that it is possible to "waive" or consent to the representation of the defendants by Mr. Chatz, no waiver or consent has occurred. All of this, the Trustee maintains, is in violation of Canons 4, 5 and 9 of ABA Code of Professional Responsibility.

The Trustee also maintains that Chatz should be disqualified under Disciplinary Rule 5–102 of the ABA Code of Professional Responsibility because the Trustee intends to call Chatz as a witness to testify as to the control exerted by Drobny and Nortman during the period when Chatz-Berman represented the debtors-in-possession.

F. It is the position of the Trustee that if Chatz is disqualified from representing Drobny and Nortman, Lord-Bissell is also disqualified because of the "imputed disqualification" rule.[5]

G. Nick J. DiGiovanni filed an affidavit which states that he is the attorney primarily responsible for the representation of defendants Drobny and Nortman. DiGiovanni says that while at Lord-Bissell, James Chatz was not involved in Drobny's and Nortman's defense in this case. DiGiovanni further states that he and James Chatz have never discussed Chatz's prior representation of Debtors.

H. In rebuttal, Trustee's counsel has filed a document which purports to be the minutes of a meeting of Debtors' limited partners held on May 17, 1983 at Lord-Bissell. According to the document, Drobny, Nortman, DiGiovanni and Chatz were in attendance at this meeting. The discussion centered around the status of the various lawsuits involving the limited partnership. Involved in that discussion was the Trustee's action against Drobny and Nortman. In addition, certain pleadings filed by Lord-Bissell on behalf of Drobny and Nortman listed Mr. Chatz as one of the attorneys involved in the proceeding.

I. Subsequent to the filing of the disqualification motion, in April 1986, James Chatz left Lord-Bissell to join another law firm.

The Court Concludes and Further Finds:

■ 1. The Seventh Circuit has adopted the "substantial relationship" test as the standard for disqualification of attorneys who undertake litigation against a former client. *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 223–34 (N.D.Ill. 1975) *adopted and affirmed*, 532 F.2d 1118, 1119 (7th Cir.1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1322 (7th Cir.1978). Disqualification arises out of concerns for the protection of client confidences and secrets on the one hand, and loyalty to a client and the appearance of disloyalty and impropriety on the other. The substance of these concerns is derived from Canons 4 and 9 of the American Bar Association Code of Professional Responsibility. Briefly stated, the rule is that where an attorney undertakes to represent a client in a matter in which that client's interests are adverse to the interests of a former client, the attorney is disqualified if the subject matters of the cases are "substantially related." Whether there is a substantial relationship turns on the possibility, or appearance, "that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation." *LaSalle Nat. Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir.1983) citing *Canon* 398 F.Supp. at 223. The moving party need not prove that the attorneys whose conduct is in question actually received confidential information during the course of their former representation. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir.1976).

■ The substantial relationship test has three prongs. First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reason-

---

**5.** Disciplinary Rule 5–105(d) provides that:
If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment.

able to infer that the confidential information would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978); *LaSalle*, 703 F.2d at 255, 256.

■ 2. The existence of a substantial relationship gives rise to two presumptions. The first is that the attorney received confidential information during his representation of his former client. *Schloetter*, 546 F.2d at 710. The second presumption is that the confidential information acquired by the attorney whose change of employment raises the disqualification issue will be imputed to the members of the law firm engaged in the present representation. *Novo Terapeutisk Laboratorium, A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186 (7th Cir.1979) (en banc). These presumptions, however, can be rebutted. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982); *Novo Terapeutisk*, 607 F.2d 186; *LaSalle*, 703 F.2d 252. The evidence necessary to rebut the first presumption must "clearly and effectively demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983), citing *Freeman*, 689 F.2d at 723. In order to rebut the second presumption which is often referred to as the presumption of shared confidences, it must be shown that "specific institutional mechanisms" were in place which effectively insulated members of the present firm from receiving confidential information brought by the "infected" attorney. *Schiessle*, 717 F.2d at 421. Courts have considered the following factors in evaluating the effectiveness of the "Chinese Wall" constructed to prevent this flow of confidential information: (1) the likelihood of contact between the "infected" attorney and the specific attorneys responsible for the present representation; (2) the size and structural divisions of the law firm involved; (3) the existence of rules which prevent the "in-

fected" attorney from access to relevant files or other information pertaining to the present litigation or which prevent him from sharing in the fees derived from such litigation. *Schiessle*, 717 F.2d at 421, citing *LaSalle*, 703 F.2d at 259. This Court shall proceed to apply these well articulated standards to the case at bar.

■ 3. As to the first prong of the substantial relationship test, there are facts in the record which would enable this Court to reconstruct the scope of Chatz's prior representation. Chatz was retained to represent Columbia and MHA in a Chapter 11 proceeding.

4. Applying the second prong of the substantial relationship test, the Court finds that it is reasonable to infer from the scope of the representation that confidential information was given to Chatz which would have been given to an attorney representing a debtor in a Chapter 11 proceeding. In representing the Debtors while in Chapter 11, Chatz would necessarily become privy to the Debtors' financial information and their methods of operating in order to adequately represent them. Undoubtedly, Chatz would have to become familiar with every aspect of Debtors' businesses including their financial dealings. As the Debtors' counsel, he would be a key participant in the on-going operation of the partnerships. Chatz knew of the legal structure of the partnerships. More importantly, he would have to become aware of how these entities actually functioned. The knowledge Chatz acquired while representing the Debtors is directly related to issues raised in the Trustee's complaint. Activities of Drobny or Nortman which would subject them to liability as general partners (despite their legal designation as special limited partners) would be available to Chatz while representing Debtors. Therefore, the Court finds that the Trustee's adversary suit and Chatz's prior representation of Debtors are factually connected. The Court further observes that given the depth of information acquired by an attorney representing a debtor in Chapter 7, 11, 12 or 13, it would be very difficult to establish the lack of a factual connection in

cases where the debtor's counsel subsequently represents another party in an adversary proceeding against the debtor. It is not necessary for the Trustee to prove, as Lord-Bissell maintains, that Chatz actually received a particular piece of confidential information since "its receipt will be presumed in circumstances which make it a likely possibility." *LaSalle,* 703 F.2d at 256, *citing Schloetter,* 546 F.2d at 710. Further, it is reasonable to infer that Chatz knew of the Debtors' financial situations, its legal structures and the acts of its limited and general partners during the period in which he represented the Debtors as debtors-in-possession.

■ 5. Applying the third prong of the substantial relationship test, the Court finds that the information Chatz received while acting as Debtors' counsel is relevant to the issues raised in the litigation initiated by the Trustee. Lord-Bissell maintains that the Trustee's adversary suit against Drobny and Nortman does not come within the scope of Chatz's prior representation of Columbia and MHA. The short length of time during which Chatz represented Debtors (less than one year) does not affect the quality of the information that Chatz is presumed to have received nor does the time which has passed since Chatz represented Debtors (four years) suggest that that information has become stale. There is a presumption that Chatz received confidential information in his prior representation which is relevant to the Trustee's adversary complaint. The Court concludes that a substantial relationship exists between the subjects of Chatz's prior representation of Debtors and the Trustee's adversarial complaint against Drobny and Nortman.

■ 6. Having concluded that a substantial relationship exists between the past and present representation, thereby giving rise to a presumption that confidential information was received during the prior representation, this Court must now determine whether that presumption has been rebutted. *Freeman,* 689 F.2d at 722, 723. A strict standard of proof is necessary to rebut this presumption, and any

doubts regarding the existence of a conflict of interest must ultimately be resolved in favor of disqualification. *Westinghouse,* 588 F.2d at 225.

In the case at bar, there are no facts in the record which would rebut the presumption that Chatz received confidential information while serving as counsel for Debtors.

7. There is a presumption of shared confidences which arises in this case when Chatz moved to Lord-Bissell and became the head of its bankruptcy department. The confidential information Chatz acquired while representing Debtors will be imputed to the members of the Lord-Bissell law firm. *Novo Terapeutisk,* 607 F.2d 186. This presumption of shared confidences can be rebutted if Lord-Bissell sufficiently insulated Chatz from the members of the firm responsible for Drobny's and Nortman's defense.

■ To rebut this presumption, Lord-Bissell submitted the affidavit of Nick J. DiGiovanni. This document attempts to rebut the presumption of shared confidences by denying that Chatz was involved in the defense of Nortman and Drobny. The affidavit states that DiGiovanni, "was the attorney primarily responsible for their representation" and that DiGiovanni never discussed with Chatz Chatz's prior representation of the Debtors. This affidavit alone is insufficient to rebut the presumption of shared confidences. Statements of mere denial such as those made in the DiGiovanni affidavit are clearly insufficient to rebut the presumption of shared confidences. The Court also notes that the disqualified attorney in this case, Chatz, has not filed an affidavit. The record in this case shows that Lord-Bissell never established any institutional mechanism which would isolate Chatz from the efforts taken by the firm to defend Drobny and Nortman. Chatz's name appears on many of the pleadings filed by Lord-Bissell in the Trustee's lawsuit. From this fact, it is reasonable to assume that Chatz was well aware of this litigation. As head of Lord-Bissell's bankruptcy department, it is more than likely that Chatz may have had some input in

directing the defense of Drobny and Nortman and DiGiovanni's affidavit without more does not overcome the presumption of shared confidences.[6]

8. The Court is aware that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman*, 689 F.2d at 721. Disqualification is the only remedy which could resolve the apparent conflict of interest present in this case. The Court concludes that Lord-Bissell must be disqualified from the continued representation of Drobny and Nortman in the adversary complaint filed against them by the Trustee based on the above analysis. The impact of the Trustee's expressed desire to call Chatz as a witness in the pending litigation does not need to be addressed.

9. The fact that Chatz has now left Lord-Bissell is of no import. It would be unreasonable to expect the public or clients who have reposed confidences in a member of a law firm to accept the proposition that the danger of those confidences being used against the client in a closely related matter has entirely dissipated upon the departure of the individual member of the firm. *Schloetter*, 546 F.2d at 711.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Trustee's Motion to Disqualify the law firm of LORD, BISSELL & BROOK from representing Defendants SHELDON DROBNY and JACK NORTMAN in the above-entitled Complaint be, and the same is hereby granted.

---

**6.** Examples of effective steps which can be taken to isolate "infected attorneys" were discussed in *LaSalle*, where it was stated:

> The [infected] attorney ... was denied access to relevant files and did not share in the profits or fees derived from the representation in question; discussion of the suit was prohibited in his presence and no members of the firm were permitted to show him any documents relating to the case; and both the disqualified attorney and others in his firm affirmed these facts under oath.

703 F.2d at 259, citing *Armstrong v. McAlpin*, 625 F.2d 433, 445 (2nd Cir.1980) (en banc), *vacated on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

Institutional mechanisms such as these should be in place at the time the disqualifying event occurs. *LaSalle*, 703 F.2d at 259.