Hugh T. ADAMS, Appellant,

v.

David R. SLONIM, in his personal capacity and in his official capacity as sole general partner of the Eastside Limited Partnership and Westside Limited Partnership, et al., Appellees.

No. 89–7256.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 1990.

Decided Jan. 22, 1991.

David G. Webbert, with whom John Joseph Cassidy and Stephen L. Braga were on the brief, for appellant.

George W. Miller, with whom Joseph E. Bankert was on the brief, for appellees.

Before SILBERMAN, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

This appeal involves the interpretation of former D.C.Code section 41–213 (1981),[1] which set limits on the financial transactions that a limited partner can conduct with the partnership. The district court concluded that section 41–213 did not bar a limited partner from obtaining a security interest in partnership property but did prevent him from assuming greater priority than the partnership's general creditors in all instances. We reverse and hold instead that section 41–213 prohibited a limited partner from owning a security interest in partnership property only if the partnership was insolvent when the interest was created.

---

1. In 1987, section 41–213 was superseded by section 41–407 (1990). Notwithstanding the re- peal of section 41–213, the parties agree that that section applies here.

## I.

Appellant Hugh Adams was a limited partner in the Eastside Limited Partnership and the Westside Limited Partnership (partnerships). The two partnerships were established by appellee David Slonim, their general partner, for the purpose of purchasing and renovating real estate. Between 1982 and 1986, Bankers Trust, the partnerships' primary lender, made more than five million dollars in loans to them. In return for these loans, Bankers Trust received promissory notes from the partnerships, and, in 1985, a first mortgage on their property. In addition Adams guaranteed the partnerships' loans by pledging over five million dollars of his personal securities to Bankers Trust. It is undisputed that the bank was a holder in due course of the first mortgage and that the bank promptly and properly recorded the mortgage. There is also no dispute that the partnerships were solvent when they gave the mortgage to Bankers Trust.

In late 1986 Bankers Trust began to lose faith in the partnerships' ability to repay their loans and in January 1987 it decided to demand immediate payment. When faced with the prospect that the bank intended to collect on his guaranty, Adams agreed to purchase the partnerships' notes from the bank. In return, Bankers Trust assigned the notes, along with the mortgage in the partnership property, to Adams. Although Adams did not record the deed of trust at that time, he nonetheless then became a secured creditor with priority. *See* D.C.Code §§ 45–801 and 45–802 (1981). Thus, in January 1987, Adams was the partnerships' main creditor. The parties disagree whether the partnerships were insolvent at that time and the district court made no finding on the issue.

Several months after Adams obtained the security interest, appellee First Commercial Bank (First Commercial) extended a loan to one of the partnerships and, in return, received what purported to be a first mortgage on the property originally mortgaged to Bankers Trust, then assigned to Adams. After First Commercial completed its loan, Slonim, on behalf of the partnership but without Adams's knowledge, recorded two deeds of substitution and release which falsely stated that the original mortgage given to Bankers Trust had been satisfied and discharged. On learning of these recordings, Adams recorded the deed of trust assigned to him by Bankers Trust. Thereafter Adams filed this action seeking to recover his interest from the receiver in bankruptcy. First Commercial intervened and petitioned the district court to declare its interest superior to Adams's interest. The district court granted summary judgment to First Commercial, concluding that Adams's interest is equal only to that of a general creditor.

Section 41–213 provided:

(a) A limited partner also may loan money to and transact business with the partnership, and, unless he is also a general partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim:

(1) Receive or hold as collateral security any partnership property[,] [2] or

(2) Receive from a general partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge liabilities to persons not claiming as general or limited partners.

(b) The receiving of collateral security, or a payment, conveyance, or release in violation of the provision of subsection (a) of this section is a fraud on the creditors of the partnership.

The district court focused on the language in subsection (a) permitting a limited partner to "receive ... with general creditors, a pro rata share of the assets" and conclud-

---

**2.** When Congress originally enacted section 41–213(a)(1), the punctuation mark appearing after "property" was a comma. When the D.C.Code was recodified and reprinted in 1981, however, this punctuation mark inexplicably became a semicolon. We believe (as did the district court) that this change in punctuation was the result of a printer's error and we therefore set forth the statute as originally written.

ed that a limited partner could not be placed in a better position than a general creditor. The district court did not discuss the remaining provisions of the statute.

## II.

Adams makes two arguments to explain why section 41–213 does not prohibit him from holding a secured interest in partnership property. First, relying on the language in the first sentence, Adams claims that the statute is applicable only when a limited partner "loan[s] money to [or] transact[s] other business with the partnership." Because he acquired his security interest from Bankers Trust, not from the partnerships themselves, Adams argues that he did not "transact business with" or "loan money to" the partnerships and therefore the statute does not apply. Alternatively, Adams argues that if section 41–213 does apply, it prohibits the transfer of a security interest to him only if the interest was created when the partnerships were insolvent. Because the partnerships were solvent at the time Bankers Trust's security interest was created, Adams maintains that his transaction does not come within the statute's prohibition.[3]

First Commercial claims that Adams's interpretation of section 41–213 contradicts the plain language of the statute.[4] First Commercial focuses exclusively on the language of section 41–213(a)(1) providing that "[n]o limited partner shall ... receive or hold as collateral security any partnership property...." Because this language is "clear" on its face, claims First Commercial, the court should ignore the legislative intent inquiry Adams urges and construe the statute as totally prohibiting a limited partner from owning a security interest in partnership property.

## A.

█ We first reject Adams's argument that section 41–213 does not apply at all to

Bankers Trust's assignment of the mortgage to him because he did not acquire the security interest directly from the partnerships. Like the district court, Adams focuses exclusively on the first sentence of section 41–213 and ignores the remainder of the provisions. According to Adams, the statute applies only if a limited partner "loans money to" or "transacts business with" the partnership. Although the first sentence, by itself, seems to support this interpretation, the language used in subsection (a)(1), when compared to (a)(2), dispels any notion that the section applies only to direct transactions with the partnership. In specific, subsection (a)(2) prohibits a limited partner from "[r]eceiv[ing] from a general partner or the partnership any payment, conveyance, or release from liability," while subsection (a)(1) generally prohibits a limited partner from "receiv[ing] or hold[ing] as collateral security any partnership property." Absent from subsection (a)(1) is any language manifesting that it applies only to a direct transaction with a general partner or the partnership. Because the two subsections are closely related and appear in the same statute, we can presume that the limiting language found in subsection (a)(2) was intentionally omitted from subsection (a)(1). *See, e.g., Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Accordingly, subsection (a)(1)—which covers the transaction here—is not limited to direct transactions with a general partner or the partnership.

We similarly reject First Commercial's assertion that section 41–213 is an unambiguous bar preventing limited partners from holding security interests in partnership property under any circumstances. In interpreting the statute, we cannot simply consider a single clause or sentence but

---

**3.** Additionally, Adams argued at oral argument that the partnerships were not insolvent at the time he obtained the interest from Bankers Trust and, therefore, even if the statute is interpreted to prohibit a limited partner from assuming an existing security interest at a time when the partnership is insolvent, his assumption of

the security interest was not prohibited. As noted earlier, this issue was disputed, and unresolved, below.

**4.** First Commercial does not expressly use the district court's reasoning although it reaches the same result.

must consider the statute as a whole. *See Stafford v. Briggs*, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 220–21, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986); *District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 714 (D.C.1987); *see also* 2A N. Singer, *Sutherland Statutory Construction* § 46.05 (4th ed. 1984). Although subsection (a)(1), when read in isolation, seems to prohibit a limited partner from acquiring a security interest in partnership property in any circumstances, it is unclear when section 41–213 is read in its entirety. For example, if subsection (a)(1) is interpreted to prohibit totally a limited partner from owning a security interest in partnership property, it creates a tension with subsection (a)(2). Subsection (a)(2) prohibits a party from receiving "any payment, conveyance, or release from liability, *if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners*" (emphasis added).[5] Under First Commercial's interpretation of the statute, subsection (a)(1) would bar Adams's security interest absolutely but subsection (a)(2) would preclude it only when the partnership is insolvent.

In addition to the potential tension between subsections (a)(1) and (a)(2), subsection (a)(1) becomes ambiguous when read in conjunction with subsection 41–213(b). That subsection provides that "[t]he receiving of collateral security, or a payment, conveyance, or release *in violation of the provision of subsection (d) of this section* is a fraud on the creditors of the partnership" (emphasis added). If *all* security interests were prohibited by subsection (a), there would be no reason for subsection (b) to distinguish between collateral security that is received in violation of subsection (a) and all other collateral security. Because subsection (b) makes this distinction, it becomes doubtful that subsection (a)(1) bars the creation of all security interests.

In view of these inconsistencies and ambiguities, we cannot conclude that the statute is plain on its face. Moreover, the structure of subsection (a) itself creates an ambiguity whether the restrictive language following subsection (a)(2) applies only to subsection (a)(2) or to both subsections (a)(1) and (a)(2). The fact that the restrictive language is not placed apart from subsection (a)(2) does not dictate that it applies only to that subsection. Indeed, several commentators have concluded that a printer's error exists in the statute and that the restrictive language following subsection (a)(2) should have been separated from the body of the clause. *See* Kratovil and Werner, *Fixing Up the Old Jalopy—The Modern Limited Partnership Under the ULPA*, 50 St. John's L.Rev. 51, 62–66 (1975); Roegge, Talbot and Zinman, *Real Estate Equity Investments and the Institutional Lender*, 39 Fordham L.Rev. 579, 603–07 (1971); *see also* A. Bromberg, *Crane and Bromberg on Partnership* at 94 n. 45 (1968). In other words, according to their interpretation, section 41–213(a) should read:

> ... No limited partner shall in respect to any such claim:
>
> (1) Receive or hold as collateral security any partnership property, or
>
> (2) Receive from a general partner or the partnership any payment, conveyance, or release from liability,
>
> if at the time the assets of the partnership are not sufficient to discharge liabilities to persons not claiming as general or limited partners.

To determine the intended meaning of section 41–213, therefore, we turn to the legislative history of the uniform act[6] and view the statute in light of its general purpose. *See Burlington N.R. Co. v. Oklahoma Tax Com.*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987) (ambiguous statute requires resort to legislative history); *International Union v. Mine Safety and Health Administration*, 900 F.2d 384, 386 (D.C.Cir.1990) (same);

---

**5.** "Conveyance" includes "every assignment, lease, mortgage, or encumbrance." D.C.Code § 41–101(e) (1981).

**6.** Section 41–213 was adopted from section 13 of the first Uniform Limited Partnership Act.

*General Motors Acceptance Corp. v. One 1962 Chevrolet Sedan,* 191 A.2d 140 (D.C. 1963) (same); *see also Dynamics Corp. of America v. CTS Corp.,* 643 F.Supp. 215, 221 (N.D.Ill.1986) (official comment to uniform act substitutes for legislative history); *Mohs v. Aetna Casualty & Surety Co.,* 349 N.W.2d 580, 583 (Minn.Ct.App.1984) (same).

The Official Comment that accompanies section 13 of the first Uniform Limited Partnership Act states:

> The limited partner is not debarred from loaning money or transacting other business with the partnership as any other non-member; provided he does not, in respect to such transactions, accept from the partnership collateral security, or receive from any partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge its obligations to persons not general or limited partners.

Commissioners' Note to Section 1 of the ULPA (Fifth) (discussing section 13 of the first Uniform Limited Partnership Act). This note eliminates the grammatical ambiguity found in the statute and supports the conclusion that the limiting language of subsection (a)(2) (*i.e.,* conveyances are prohibited *only if* the partnership is insolvent) also applies to subsection (a)(1).

Nearly every court that has interpreted section 13 has read the insolvency restriction as applying to subsection (a)(1) as well as to subsection (a)(2). *See Hughes v. Dash,* 309 F.2d 1 (5th Cir.1962); *A.T.E. Financial Services Inc. v. Corson,* 111 N.J.Super. 254, 268 A.2d 73 (N.J.Super.Ct. Ch.Div.1970); *see also Kramer v. McDonald's System, Inc.,* 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504, 507 (1979); *Grainger v. Antoyan,* 48 Cal.2d 805, 313 P.2d 848 (1957).[7] Nonetheless, First Commercial relies on one authority that supports its "plain language" interpretation of subsection (a)(1). *See In re Hecht,* 51 B.R. 72 (Bkrtcy.D.Vt.1985). In *Hecht,* however,

the court actually upheld the limited partner's security interest despite its assertion that subsection (a)(1) bars such interests. *Id.* at 76. Given this result, we do not find that authority persuasive. Accordingly we reject the "plain language" interpretation of the *Hecht* court in favor of the weight of authority to the contrary.

■ We interpret section 41–213(a)(1) to prohibit a limited partner from obtaining a security interest in partnership property only when the partnership is insolvent. Like the court in *Dash* and like the commentators mentioned above, we conclude that the limiting language following subsection (a)(2) must be applied to both subsections (a)(1) and (a)(2).

### B.

■ Having concluded that the limiting language following subsection (a)(2) applies to Adams's security interest, we must next determine the significance of that limitation. Specifically, we must determine whether the limitation requires us to examine the partnerships' solvency at the time the security interest was created or at the time it was assigned to Adams.

The Commissioners' Note to the Uniform Limited Partnership Act indicates that D.C. Code section 41–213 was designed to prevent limited partners from using their inside position to defraud general creditors. *See* Commissioners' Note, Section 1, ULPA, at 4 (Fifth); *see also Hughes v. Dash,* 309 F.2d at 2. Consistent with this purpose, the statute prevents a limited partner from receiving a security interest from the partnership when the partnership is insolvent. If we were to construe the statute to prevent a limited partner from also receiving a security interest from third parties when the partnership is insolvent, however, the statutory purpose would not be promoted. In the latter instance, there would be no danger that the security interest was created to preempt the creditors because the

---

7. Even though these cases did not interpret former D.C.Code section 41–213, they interpreted a uniform statute, from which section 41–213 was taken, and therefore carry "more than mere persuasive authority." 2A *Sutherland, supra,* at

§ 52.05. Moreover, the D.C. Partnership Act expressly provides that the statute should be interpreted to promote uniformity among the various jurisdictions that have adopted the uniform act. D.C.Code § 41–227(b) (1981).

security interest would have been in existence before the insolvency and its priority would remain unaffected by the transfer to the limited partner.

In light of the statute's design, we read section 41–213 to prohibit a limited partner from receiving a security interest from a third party only if the partnership is insolvent when the security interest is first created. Here, then, we look to whether the partnerships were insolvent in 1985 when Bankers Trust first acquired the security interest. Since First Commercial does not contend that the partnerships were insolvent at that time, we conclude that Adams's subsequent acquisition of the security interest is not prohibited by section 41–213.[8]

To sum up, the district court's conclusion that Adams stands as a general creditor only is an error of law. Adams's security interest was not obtained in violation of the statute and therefore he is a bona fide secured creditor. Accordingly, the judgment below is

*Reversed.*

---

8. By allowing Adams to obtain a security interest from Bankers Trust at a time when he may not have been able to receive an interest from the partnerships directly, we are not creating a loophole in the statutory structure. If, for instance, we assume that the partnerships were insolvent in January 1987 (when Adams received the security interest), then without doubt the statute would have prohibited Adams from loaning five million dollars to the partnerships and obtaining a new security interest in the partnerships' property. Nonetheless, by allowing Adams to purchase the partnerships' debt and thereby to acquire an existing security interest, we do not permit him to do the same thing. In the first instance (direct loan to the partnerships) a new security interest is created at the time of insolvency; in the second instance (purchase of the partnerships' debt), an existing interest, created at a time of solvency, simply changes hands. This distinction is significant. As already noted, the statute was designed to prevent a limited partner from ousting general creditors at the eleventh hour and, perhaps, making an inside deal when the partnership is in a precarious financial condition. There is no danger that either of these harms will occur when an existing security interest is merely transferred from one creditor to another.