**KESTERSON FOODS, Plaintiff–Appellant,**

v.

**Ronnie W. SCOTT, Defendant–Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 30, 1996.

Application for Permission to Appeal Denied by Supreme Court Sept. 3, 1996.

David A. Riddick, Jackson, for Plaintiff–Appellant.

William R. Neese, Dresden, for Defendant–Appellee.

CRAWFORD, Presiding Judge, Western Section.

In this non-jury case, plaintiff, Kesterson Foods, appeals from the judgment of the trial court dismissing its suit against defendant, Ronnie Scott. The pertinent facts have been stipulated by the parties and are as follows. On April 5, 1990, Scott, as a limited partner, and James and Norma Foust, as general partners, formed a limited partnership entitled "Foust and Scott, L.P." (hereinafter "Partnership"), the primary purpose of which was to operate a convenience store in Camden, Tennessee.[1] Under the terms of the partnership agreement, Scott made a capital contribution of $26,000.00 to the Partnership. The capital contribution plus 12 percent interest per annum was to be repaid by the Partnership under an amortization plan in sixty (60) monthly payments of $591.58. The Partnership failed to make the scheduled payments to Scott and in June of 1992, the balance due was $17,026.61. In March of 1993, the Partnership and Scott negotiated a security agreement and financing statement, giving Scott a security interest in the convenience store's inventory. The security agreement provided, in pertinent part:

> This security interest is granted in consideration of the Secured Parties' [Scott] forbearance from declaring a default, demanding payment in full and starting collection activities and to secure a certain obligation, evidenced in the Limited Partnership Agreement dated April 5, 1990, in the principal amount of twenty-six thousand dollars ($26,000), payable in sixty monthly installments of principal and interest at a variable rate, and other charges as provided therein, together with any extensions, modifications, and renewals thereof.

Scott duly perfected the security agreement by filing a UCC–1 financing statement on May 25, 1993.

Not only did the Partnership fail to pay Scott, it also failed to make timely rental payments to its landlord and, consequently, the landlord entered and retook the premises on June 25, 1993. The landlord's actions constituted an event triggering dissolution per the partnership agreement, but the record is silent as to any winding up of the partnership. The landlord thereafter contacted Scott, as the secured party, and negotiated a purchase of the inventory from him. A professional inventory control company valued the inventory at $11,102.22 and Scott sold the goods to the landlord for that amount.

Prior to the dissolution of the Partnership, Kesterson Foods delivered goods to the Partnership's convenience store on open account.

---

**1.** The Foust's filed a petition under Chapter 11 of the Bankruptcy Code and are not parties to this lawsuit.

When the Partnership ceased doing business, the Partnership's account balance with Kesterson was $6,043.00. Kesterson filed suit against Scott in general sessions court for:

> damages in the amount of $6,043.00 due to Defendants' violation of Limited Partnership Agreement with B–Rite Food Co. # 504 and for T.C.A. § 61–2–802 in that the Defendant improperly circumvented the requirements of T.C.A. § 61–2–802 and the Limited Partnership Agreement when he received his capital contribution back from said partnership prior to payment of Creditors of which Kesterson Food Company is a Creditor of B–Rite Store # 504 in the amount of $6,043.00.

From an adverse judgment in general sessions court, Kesterson appealed to the circuit court, and now appeals from the circuit court's judgment dismissing its suit. Kesterson's issue, as stated in its brief, is:

> Who has priority in regard to the proceeds derived from the sale of assets of a limited partnership, a creditor of the partnership or a limited partner?

A determination of this issue is not dispositive of this appeal. Pursuant to T.C.A. § 61–2–804(a)(1) regarding distribution of assets, creditors are entitled to the first distribution. The real issue in this case is whether a limited partner may become a secured creditor by securing his contribution as a limited partner.

■ The main purpose of a limited partnership is to permit a form of business enterprise, other than a corporation, in which persons may invest money without becoming liable for the debts of the firm. 59A Am. Jur.2d *Partnerships* § 1240 (1987). In the instant case, Scott's contribution to the limited partnership was $26,000.00, and the agreement provides for repayment of the capital contribution as heretofore set out. Scott asserts that this case involves a conflict between the "claim of a duly perfected secured creditor to his collateral and the claim of an unsecured creditor to the same assets." We must respectfully disagree, because the first question to be answered is whether Scott can convert his capital contribution into a secured debt. We have no quarrel with Scott's assertion that a limited partner may

also be a creditor of the limited partnership. *See* T.C.A. § 61–2–108 (1989). However, we find nothing in the statute that would allow a limited partner to have the status of a creditor as to the amount of his contribution as a limited partner. The intent of T.C.A. § 61–2–804 (1989) is to the contrary. The statute provides:

**61–2–804. Distribution of assets.**—(a) Upon the winding up of a limited partnership, the assets shall be distributed as follows:

(1) To creditors, including partners who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited partnership (whether by payment or the making of reasonable provisions for payment thereof) other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to partners under § 61–2–601 or § 61–2–604;

(2) Unless otherwise provided in the partnership agreement, to partners in satisfaction of liabilities for distributions under § 61–2–601 or § 61–2–604; and

(3) Unless otherwise provided in the partnership agreement, to partners first for the return of their contributions, and second respecting their partnership interests, in the proportions in which the partners share in distributions.

(b) A limited partnership which has dissolved shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured claims and obligations, known to the limited partnership and all claims and obligations which are known to the limited partnership but for which the identity of the claimant is unknown. If there are sufficient assets, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Unless otherwise provided in a partner-

ship agreement, any remaining assets shall be distributed as provided in this chapter. Any liquidating trustee winding up a limited partnership's affairs who has complied with this section shall not be personally liable to the claimants of the dissolved limited partnership by reason of such person's actions in winding up the limited partnership.

The statute is quite explicit that creditors of the limited partnership have first priority. Following payment of the creditors, the partners may distribute the remaining assets. Reading this statute as a whole, we find that the legislature did not intend for the rights of a limited partnership's creditors to be subordinate to the right of a limited partner(s) to be repaid his contribution. This conclusion is further supported by the provisions of T.C.A. § 61–2–607 (1989), which state:

**61–2–607. Limitations on distribution.**—(a) A limited partnership shall not make a distribution to a partner to the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited partnership, other than liabilities to the partners on account of their partnership interests and liabilities for which the recourse of creditors is limited to specified property of the limited partnership, exceed the fair value of the assets of the limited partnership, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited partnership only to the extent that the fair value of that property exceeds that liability.

(b) A limited partner who receives a distribution in violation of subsection (a), and who knew at the time of the distribution that the distribution violated subsection (a), shall be liable to the limited partnership for the amount of the distribution. A limited partner who receives a distribution in violation of subsection (a), and who did not know at the time of the distribution that the distribution violated subsection (a), shall not be liable for the amount of the distribution. Subject to subsection (c), this subsection (b) shall not affect any obligation or liability of a limited partner

under a partnership agreement or other applicable law for the amount of a distribution.

(c) Unless otherwise agreed, a limited partner who receives a distribution from a limited partnership shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of three (3) years from the date of the distribution.

In the instant case, it is not only clear that the legislature's intent was frustrated when Scott, by obtaining a security interest in his capital contribution, trumped the rights of Kesterson, an unsecured creditor, it is also evident that by paying Scott the assets of the limited partnership were depleted, causing the partnership's liabilities to exceed its assets in violation of T.C.A. § 61–2–607(a).

Counsel has cited no Tennessee case to this Court, nor has our research revealed any, which specifically addresses the question of whether a limited partner may enjoy the priority status of a partnership creditor with regard to the limited partner's capital contribution. However, in *Kramer v. McDonald's Sys., Inc.*, 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504 (1979), the Illinois Supreme Court considered that precise question. That court held that the limited partner is prohibited by the express provisions of the Uniform Limited Partnership Act (1916) (U.L.A.) § 16, as codified in the Illinois statutes, from accepting collateral as security for his capital contribution. The *Kramer* court relied upon § 16 of the Uniform Limited Partnership Act, which provides, in pertinent part:

**§ 16. Withdrawal or reduction of limited partner's contribution.**

(1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until

(a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains

property of the partnership sufficient to pay them.

The *Kramer* court said:

> A limited partnership interest is in the nature of an investment. (*Klein v. Weiss,* (1978), 284 Md. 36, 53, 395 A.2d 126, 136.) Through his contribution, the limited partner becomes entitled to share in the profits and losses of the partnership, though his share of the losses will not exceed the amount of capital initially contributed to the enterprise. (*Klein v. Weiss,* (1978), 284 Md. 36, 52, 395 A.2d 126, 135.). However, when the limited partner makes the contribution, he is placing that amount at risk. He is not permitted to insure that risk or to guarantee a return to himself by taking some form of security.

33 Ill.Dec. at 119, 396 N.E.2d at 508.

Although *Kramer* was decided based upon Illinois' adoption of § 16 of the Uniform Limited Partnership Act of 1916, the Tennessee statute, T.C.A. § 61–2–607, is based on § 607 of the Uniform Limited Partnership Act of 1976 and the 1985 amendments, which was derived from § 16(1)(a) of the Uniform Limited Partnership Act of 1916. *See* Committee Comment, Uniform Limited Partnership Act (1976) (U.L.A.) § 607. Significantly, both statutes accomplish the same purpose; that is, they prohibit a limited partner from receiving a return of his contribution prior to the partnership's creditors.

Considering the Tennessee Limited Partnership Act as a whole, we believe that the comments of the *Kramer* court are equally applicable to Tennessee's limited partnership statutes. Like the *Kramer* court, we find that allowing a limited partner to obtain a security interest in his capital contribution, thereby insulating himself from risk, defeats the purpose of the limited partnership business enterprise. Accordingly, we hold that a limited partner may not become a creditor of the limited partnership with regard to his contribution to the limited partnership. Accordingly, Scott's security interest in the instant case does not have priority over the claims of the general creditors.

This case is before us as an action by a creditor against the limited partner. Technically, the liability of the limited partner is to the limited partnership, T.C.A. § 61–2–607(b), but because the Partnership apparently ceased to exist, we deem Kesterson's suit as brought on behalf of the limited partnership. The distribution Scott received was in in violation of T.C.A. § 61–2–607(a), thereby making Scott liable to the Partnership for the amount of the distribution pursuant to T.C.A. § 61–2–607(b). Accordingly, we vacate the judgment of the trial court and remand the case to the trial court for further proceedings. Upon remand, the trial court shall enter judgment for the Partnership against Scott in the amount of $11,102.22 pursuant to T.C.A. § 61–2–607(b). The court should then complete the Partnership's winding up pursuant to T.C.A. § 61–2–804. Costs of the appeal are assessed against the appellee.

FARMER and LILLARD, JJ., concur.